UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HELEN HANKS, on behalf of herself and all
others similarly situated,

                       Plaintiff,                         16-cv-6399 (PKC)

        -against-                               OPINION
                                                  AND ORDER

THE LINCOLN LIFE & ANNUITY COMPANY
OF NEW YORK; VOYA RETIREMENT
INSURANCE AND ANNUITY COMPANY,
formerly known as Aetna Life Insurance and
Annuity Company,

                       Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Helen Hanks moves pursuant to Rule 23, Fed. R. Civ. P., to certify a nationwide class of "[a]ll owners of universal life (including variable universal life) insurance policies issued by Aetna Life Insurance and Annuity Company ("Aetna") that were subjected to the cost of insurance rate increase announced in 2016 . . . ." Doc 85. Hanks asserts that she and her proposed fellow class members were subjected to an insurance rate increase based on extra-contractual determinations made by defendant Lincoln Life and Annuity Company of New York ("Lincoln Life"), who purchased the life insurance policies from Aetna in 1998. (Compl. ¶¶17, 25−33; Doc 1.) According to the Complaint, Aetna became known as Voya Retirement Insurance and Annuity Company ("VOYA") on January 1, 2002. (Id. ¶9.) Hanks brings one claim for breach of contract against VOYA, and one claim for unjust enrichment against Lincoln Life. For the reasons explained, Hanks' motion for class certification is granted in part and denied in part.

BACKGROUND

In 1984, Hanks purchased a universal life insurance policy issued by Aetna. (Id. ¶7; see Ex. A; Doc 5 (Hanks' policy).) Universal life and variable universal life policies have flexible premiums, unlike other types of life insurance that require fixed monthly premium payments. (Compl. ¶2.) Policy owners need only pay enough to cover certain monthly charges such as the cost of insurance ("COI") charge; any additional amounts not used to cover monthly charges accrue to a policy account, where they earn interest. (Id. ¶¶2−3.) The COI charge is calculated using a monthly COI rate. (Ex. A, Doc 5.) Hanks' insurance policy states that the monthly COI "is based on the Insured's sex, attained age and premium class." (Id. at 9.) The COI rate "may be adjusted by Aetna from time to time . . . on a class basis and . . . based on Aetna's estimates for future cost factors, such as mortality, investment income, expenses and the length of time policies stay in force. Any adjustments will be made on a uniform basis." (Id.) Under General Provisions, the policy states that "[t]his policy and the application are the whole contract." (Id. at 12.)

All policies in this case were issued between 1983 and 2000. (Compl. ¶13; see Declaration of Nicholas N. Spear ("Spear Decl.") Ex. 2 at 3 (listing the eighteen affected insurance policies).) They are form contracts containing substantially similar terms describing the COI rate adjustment. (Compl. ¶16; Spear Decl. Ex. 4 at 13−15 (Hause Expert Report), Ex. 10 at 266−67 (Parker 30(b)(6) Dep.), Ex. 11; Doc 89.)

In 1998, Aetna sold its life insurance business to Lincoln Life under an indemnity reinsurance agreement. (Compl. ¶17, see generally Spear Decl. Ex. 17 (Second Amended Asset Purchase Agreement), Ex. 18 (Coinsurance Agreements).) Aetna maintained contractual privity with its universal and variable universal life insurance policy holders and was required to pay out

death benefits, while Lincoln would indemnify Aetna for these costs. (Compl. ¶21; see Spear Decl. Ex. 5 at 157−58 (Brantzeg 30(b)(6) Dep.), Ex. 6 ¶¶32−33 (Pearson Expert Report).) Pursuant to a series of agreements between Aetna and Lincoln Life, Lincoln Life would "mak[e] recommendations to [Aetna] with respect to" elements including COI rate increases and Aetna would "tak[e] into account the recommendations of Lincoln [Life] with respect thereto." (Declaration of John F. LaSalle ("Lasalle Decl.") Ex. 6 at 6, Ex. 7 at 4−5; Doc 95.)

In early 2016, Lincoln Life submitted a proposed COI rate increase recommendation to VOYA (Aetna's successor), which VOYA accepted. (See Ex. 13, Doc 28; Spear Decl. Ex. 32; Lasalle Decl. Ex. 10 ¶¶48−50 (Pfeiffer Expert Report).) In May 2016, Lincoln Life, "acting as administrative agent for [VOYA]," sent policyholders notice of a COI rate increase effective June 1, 2016. (Compl. ¶25; see Spear Decl. Ex. 39 ¶8 (Mills Expert Report).) The stated reasons for the COI rate increase included changes in future expectations of key cost factors associated with providing coverage, including lower investment income and higher reinsurance costs. (Compl. ¶25; see Spear Decl. Ex. 7; Lasalle Decl. Ex. 11.) Following an investigation by the New York State Department of Financial Services, VOYA suspended the COI rate increase as applied to New York policyholders. (Spear Decl. Exs. 8, 38; see Ex. 5 at 410−11 (Brantzeg 30(b)(6) Dep.).)

According to Hanks, the June 2016 COI rate increase constitutes a breach of contract by VOYA and unjust enrichment as to Lincoln Life. This is so, she avers, because the rate increase was improperly (1) based on Lincoln Life's future cost factors, rather than VOYA's; (2) applied to policy holders regardless of their class (sex, age, premium, etc); and (3) imposed on a non-uniform basis because it did not include New York policyholders.

## CLASS CERTIFICATION STANDARD

A party seeking class certification must satisfy the requirements of Rule 23(a) and "at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). Rule 23(a) requires a party to satisfy the four elements of "numerosity, commonality, typicality, and adequacy of representation." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013); see Rule 23(a), Fed. R. Civ. P. These four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." Dukes, 564 U.S. at 349 (quotation marks omitted). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. at 350 (emphasis in original).

Hanks seeks to certify a class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "[T]he focus of Rule 23(b)(3) is on the predominance of common questions . . . ." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013). It "does not require a plaintiff . . . to prove that each element of her claim is susceptible to classwide proof . . . ." Id. at 469 (internal quotation marks and citation omitted).

"[A] plaintiff must satisfy all of the requirements of Rule 23, by a preponderance of the evidence, to obtain class certification . . . ." Novella v. Westchester Cty., 661 F.3d 128, 148−49 (2d Cir. 2011). In reviewing a motion for class certification, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen, 568 U.S. at 466.

DISCUSSION

A.  Rule 23(a)

i.  Numerosity

Rule 23(a)(1) requires plaintiff to show that "the class is so numerous that joinder of all members is impracticable."  Plaintiff's expert estimates that there are more than 45,000 members of the proposed class.  (Mills Expert Report ¶19.)  Defendants do not dispute that Hanks has met the numerosity requirement, and the Court agrees.

ii.  Commonality

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class."  It "requires the plaintiff to demonstrate that the class members have suffered the same injury," which turns "upon a common contention."  Dukes, 564 U.S. at 350 (quotation marks omitted); see id. at 359 (stating to satisfy Rule 23(a)(2) "even a single common question will do" (internal quotation marks, citation, and alteration omitted)).  "This requirement has been characterized as a low hurdle."  McIntire v. China MediaExpress Holdings, Inc., 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks and citation omitted).  "Claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action."  Fleisher v. Phoenix Life Ins. Co., 11 cv 8405 (CM), 2013 WL 12224042, at *3 (S.D.N.Y. July 12, 2013) (quoting Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 74 (E.D.N.Y. 2004)).

Hanks contends that VOYA breached the terms of the contract by basing its 2016 COI rate increase on considerations not listed in the "Cost of Insurance Rate" section of the policy,

and that the proceeds of this extra-contractual rate increase unjustly enriched Lincoln Life. The claims of the proposed class turn on common contentions of what factors VOYA or Lincoln Life used to calculate the 2016 COI rate increase and whether the insurance contracts allow for a rate increase based on those factors. For example, the court will need to review the terms of the standard form contracts to determine the meaning of "class basis" and a "uniform basis" for adjustment. (Ex. A at 9; Doc 5.) There are also common contentions of whether Lincoln Life's calculations for the COI rate increase on behalf of VOYA and VOYA's acceptance of the proposed increase constituted an adjustment "based on Aetna's estimates for future cost factors" under the terms of the contracts. (Id.) There are also common questions on the calculation for damages, such as the methodology for calculating COI overcharges to the present, the methodology for calculating future COI overcharges, and calculation of prejudgment interest. (Mills Expert Report at 9−14, 46−49, 65−66.)

The policies of the putative class contain substantially similar language on COI rate increases. (Spear Decl. Ex. 10 at 266−67, Ex. 11.) VOYA and Lincoln Life's decision on a COI rate increase was made based on the same analysis for all putative class members, leading to percentage rate increases that varied slightly across the eighteen policies. (Spear Decl. Ex. 4 ¶¶36−38 (Hause Expert Report), Ex. 7, Ex. 10 at 266 (Parker 30(b)(6) Dep.).) "There are no unique facts relevant to this dispute for each Class member, and [defendants] do[] not have different defenses to justify why some individual Class members were subjected to the COI increases. Thus, there are common answers to common questions . . . ." Fleisher, 2013 WL 12224042, at *11; see Feller v. Transam. Life Ins. Co., 16 cv 1378 (CAS)(AJW), 2017 WL 6496803, at *7 (C.D. Cal. Dec. 11, 2017) ("[W]hat matters for purposes of commonality is that . . . [defendants'] alleged breach is not assertedly based on thousands of distinct

decisions . . . , which would all require separate consideration.").  This is a claim "capable of classwide resolution . . . ."  Dukes, 564 U.S. at 350; see Steinberg, 224 F.R.D. at 74 (commonality found for a nationwide class where "all putative class members have signed substantively identical or similar form agreements" and alleged breach was "a common course of conduct that has affected all putative class members").  With respect to the unjust enrichment claim, there is a question "common to all class members and provable on a class-wide basis as to whether [Lincoln Life] unjustly profited" from VOYA's COI rate increase.  Rodriguez v. It's Just Lunch, Int'l, 300 F.R.D. 125, 136 (S.D.N.Y. 2014) (internal quotation marks, alterations, and citation omitted).  The commonality requirement is met here.

### iii.    Typicality

Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "Typicality requires that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  Mazzei v. Money Store, 829 F.3d 260, 272 (2d Cir. 2016) (internal quotation marks and citation omitted).  The typicality requirement tends to overlap with the requirement of commonality.  1 McLaughlin on Class Actions § 4:16 (15th ed.) (Westlaw 2018).

Defendants do not contest that Hanks meets the typicality requirement, and the Court concludes that the requirement is met.  Hanks, like the other proposed members of the class, signed a form contract that listed certain restrictions on when Aetna could increase the COI rate. Hanks alleges that all policyholders were affected by rate increases based on the same improper considerations.  These "plan-wide misrepresentations" support the conclusion that Hanks' claims are typical of the proposed class.  Claridge v. N. Am. Power and Gas, LLC, 15 cv 1261 (PKC),

2016 WL 7009062, at *4 (S.D.N.Y. Nov. 30, 2016) (internal quotation marks omitted); see Steinberg, 224 F.R.D. at 75; see also Feller, 2017 WL 6496803, at *8 (typicality satisfied for nationwide class of individuals suffering an alleged breach of contract where "named representatives allege a course of conduct . . . common across the class[]").

        iv.     Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." "[A]dequacy is satisfied unless 'plaintiff's interests are antagonistic to the interest of other members of the class.'" Sykes, 780 F.3d at 90 (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)); see Baffa, 222 F.3d at 59 (named plaintiff must not be "subject to unique defenses which threaten to become the focus of the litigation").

Hanks states that she understands her duties as a class representative and has dedicated a significant amount of time to working with her attorneys on this litigation. (Hanks Declaration at 1; Doc 88.) She owns one of the insurance policies that was subject to the 2016 COI rate increase and understands the facts underlying the dispute. (Id.) She states that she does not have any conflicts of interest with putative class members. (Id.)

Defendants assert that Hanks cannot adequately protect the interests of the class for two reasons. First, defendants assert that there is intra-class conflict because Hanks' theories would require defendants to calculate COI rate increases based on factors such as age and sex, and determining rates for these sub-classes would result in some class members receiving higher COI rate increases than those imposed. (Opp. Mem. at 21; Doc 94.) Defendants describe the purported class as one of "winners" and "losers," some of whom who would pay less under Hanks' proposed

theories, and some of whom would pay more.  Id. at 22; see Lasalle Decl. Ex. 20 (Pfeiffer Expert Report Ex. F).

The Court is not persuaded.  Hanks is not asking the Court to adjudicate what an appropriate COI rate increase would have been or to impose injunctive relief specifying lawful COI rate calculations; she is claiming that the COI rate increase imposed on June 1, 2016 was a breach of contract causing damages classwide.  (Compl. ¶¶42−50.)  Any future COI rate increase that Lincoln Life or VOYA seek to impose is immaterial to the current litigation.[1]

Second, defendants assert that Hanks, as a citizen of Texas for whom Texas law would apply to an unjust enrichment claim, is subject to unique defenses.  (Opp. Mem. at 14−15). For example, defendants cite Texas law holding that unjust enrichment is not an independent cause of action, that it requires an elevated showing, and that it does not allow recovery when an express contract governs the matter.  (See id.)   But these differences in state law are not unique to Hanks. Defendants do not assert, for example, that Hanks was the only policyholder who purchased a policy in Texas or for whom Texas state law would apply.  And, as defendants admit, variations in state law more generally are questions that are common to many policyholders.  (See, e.g., id. at 13 (discussing jurisdictions where defenses to unjust enrichment vary and citing applicable case law)).   To the extent variations in state law are relevant, they are considered under the predominance requirement of Rule 23(b)(3).  See infra Section B.[2]

---

[1] Defendants' reliance on a non-binding out-of-circuit case, Thao v. Midland National Life Insurance Company, 09 c 1158, 2012 WL 1900114 (E.D. Wis. May 24, 2012) is inapposite.  In Thao, the district court refused to certify a class of nationwide insurance policy holders where "the class contain[ed] many policyholders who would prefer [defendant's] interpretation of the policy to [plaintiff's]."  2012 WL 1900114, at *10.  But plaintiff in that case sought injunctive relief requiring defendant to adjust rates in a certain manner.  Here, Hanks' interpretation is not antagonistic to other members of the proposed class because she asks for damages for all class members and does not propose an alternate rate calculation.

[2] "Some courts have read into Rule 23 an implied requirement that the class be ascertainable," Rodriguez, 300 F.R.D. at 138, that is, "identifiable such that its members can be ascertained by reference to objective criteria," Sykes v. Mel Harris & Assocs., LLC, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (internal quotation marks omitted), aff'd, 780 F.3d 70.

B.  Rule 23(b)(3)

Rule 23(b)(3) requires plaintiffs to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The predominance requirement is "more demanding" than Rule 23(a)'s commonality requirement.  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (quoting U.S. Foodservice, 729 F.3d at 118).  Because class certification under Rule 23(b)(3) binds "all class members except those who affirmatively choose to be excluded," the predominance requirement ensures fairness by "test[ing] whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Langan v. Johnson & Johnson Consumer Cos., Inc., 897 F.3d 88, 96−97 (2d Cir. 2018) (quotation marks and citation omitted).

When considering whether to certify a nationwide class, the Second Circuit has stated that "the crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues."  U.S. Foodservice, 729 F.3d at 127 (citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986) ("[N]ationwide class action movants must creditably demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable

---

The putative class satisfies any ascertainability requirement because it is defined by identifiable objective criteria—all policyholders that were affected by the 2016 COI rate increase—and Hanks has stated that all policyholders can be identified in business records produced in discovery.  (Pl.'s Mem. at 13; Doc 86.)

obstacles." (internal quotation marks omitted))); see Johnson, 780 F.3d at 140−41 ("The application of multiple states' laws does not in and of itself preclude class certification.").

i.   Hanks' Claim for Breach of Contract

Hanks seeks certification for a claim asserting breach of contract against VOYA. (Compl. ¶¶42−46). "When claims in a class action arise under state law−and the class comprises multiple states−the court must consider whether different state laws will apply to different members of the class." Johnson, 780 F.3d at 140. The parties agree that the breach of contract analysis will proceed under the laws of forty-nine states,[3] Puerto Rico, and the District of Columbia, according to the law of the state that issued each policy.

"[S]tate contract law defines breach consistently such that the question will usually be the same in all jurisdictions." U.S. Foodservice, 720 F.3d at 127; see Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 233 n.8 (1995) ("[C]ontract law is not at its core diverse, nonuniform, and confusing . . . ." (internal quotation marks and citation omitted)). Hanks submits a chart purporting to show that the elements of contract law are materially uniform across jurisdictions, (Spear Decl. Ex. 43), and defendants do not contest that the elements of a breach of contract claim do not materially differ across jurisdictions.

Hanks has met her burden to demonstrate that common issues predominate on the breach of contract claim. The contract language at issue does not vary by individual class member and is not materially different across the eighteen policies. (Spear Decl. Ex. 10 at 266−70, Ex. 11.) Thus, the dispute is "based on standardized policy language." Feller, 2017 WL 6496803, at *11. There are no individualized issues with respect to defendants' conduct towards members of the putative class. (Spear Decl. Ex. 7 at 1, 4, Ex 12 (reviewing justification for rate hikes across

---

[3] New York policyholders were not subjected to a COI rate increase and are not part of the putative class.

all policies).)  While the COI rate increases differ slightly between some of the policies, the justification for the increases appear to be the same across policies.  (Spear Decl. Ex. 2, Ex. 7, Ex. 8, Ex. 32; <u>see also</u> Lasalle Decl. Ex. 10 ¶¶111−12 (Pfeiffer Expert Report).)  Therefore, adjudication of the question of breach "will focus predominantly on common evidence . . . ."  <u>U.S. Foodservice</u>, 729 F.3d at 125; <u>cf.</u> <u>Moore v. PaineWebber, Inc.</u>, 306 F.3d 1247, 1253 (2d Cir. 2002) (class action appropriate for fraud claim where class members received "standardized" communications with no "material variations in the nature of the misrepresentations made to each member of the proposed class.").

Moreover, the applicable legal standard for breach of contract is not materially different across jurisdictions.  (Spear Decl. Ex. 43.)  The main legal questions of whether VOYA violated its duty to impose COI rate increases based on class, uniformity, and with respect to its own cost factor considerations are questions that are "common to all class members."  <u>U.S. Foodservice</u>, 780 F.3d at 125; <u>see id.</u> at 126 (affirming predominance determination for a nationwide breach of contract class "[s]ince the record does not indicate the existence of material differences in contract language or other significant individualized evidence"); <u>Dover v. British Airways, PLC (UK)</u>, 321 F.R.D. 49, 57 (E.D.N.Y. 2017) (predominance requirement satisfied where the "central contention" was whether defendant breached the contract).

Defendants argue that the use of parol evidence to interpret an ambiguous or allegedly ambiguous contract is materially different between states.  (<u>See</u> Opp. Mem. at 16−17 (citing state law of Texas, California, and Delaware)).  Whether the contract is ambiguous goes to the merits of the dispute and is not resolvable at the class certification stage.  <u>Amgen</u>, 568 U.S. at 466.  Even so, defendants offer no ambiguity or alleged ambiguity that would make parol evidence relevant to resolving Hanks' claims.  <u>See</u> <u>Claridge</u>, 2016 WL 7009062, at *6 (predominance not

defeated where defendants could not demonstrate parol evidence was relevant to the breach of contract claim). Defendants claim that Hanks seeks to rely on parol evidence in the form of actuarial standards of practice, regulations, and actuarial memos. But Hanks has stated that she intends to argue "that the fully-integrated standardized Class Policies are <u>not</u> ambiguous," (Reply Mem. at 4; Doc 96), and defendants have disclaimed reliance on the cited parol evidence, (Opp. Mem. at 1 ("It is Defendants' position that these actuarial memoranda do not define the contractual rights or obligations of the parties.").).[4]

Defendants further state that Hanks "fails to provide any suitable or realistic plan for trial of the class claims in light of any variations in state law." (Opp. Mem. at 16 (quoting <u>Proctor v. Globe Life & Accident Ins. Co.</u>, 15 cv 750-M, 2017 WL 3585790, at *3 (W.D. Okla. Aug. 18, 2017))).[5] Hanks has sufficiently offered a plan for trial here by asserting that variance in state contract law is immaterial to interpretation of the contract. Should the Court later find materials terms of the contract to be ambiguous, consideration of VOYA's policies and standards of practice is still evidence "appropriately considered on a class wide basis." <u>U.S. Foodservice</u>, 729 F.3d at 124−25 (discussing expert testimony on industry practice); <u>see</u> <u>In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Mktg. Litig.</u>, 270 F.R.D. 521, 530 (N.D. Cal. 2010) ("[A]s long as plaintiffs are willing to attempt to prove their claims based solely on the policy documents, and not on any oral representations . . . the [c]ourt does not believe that a significant amount of

---

[4] For this reason, the court is similarly unpersuaded by defendants' argument that variations in actuarial memoranda defeat predominance. <u>See</u> Opp. Mem. at 18−20.

[5] Defendants' reliance on an out-of-state authority is inapt. In <u>Proctor</u>, the Court denied class certification because plaintiff "fail[ed] to identify the particular state law claims" asserted on behalf of the class, much less discuss any possible variance in state law. 2017 WL 3585790, at *3.

individualized proof will be required.").  So, too, the very question of whether the contract is ambiguous applies class-wide.

Hanks concedes that certain jurisdictions may consider extrinsic evidence to interpret an unambiguous contract provision, (Reply Mem. at 6 n.10 (stating that "the vast majority of states do not permit extrinsic evidence")), but neither party offers extrinsic evidence that the Court should consider in determining whether the contract is ambiguous, see supra.  To the extent use of extrinsic evidence to determine ambiguity becomes relevant, these variations may be handled by asking limited special interrogatories to the fact-finder on the outlying jurisdictions' requirements.  Hanks cites to 11 Williston on Contracts § 33.42 n.1 (4th ed.) as evidence of which states follow the majority rule and which do not.  (Reply Mem. at 5, 6 n.10.)  Should the predominance of common issues on the breach of contract claim come into doubt later, the Court may always sub-classify the putative class or consider de-certification.  See Rule 23(c)(1), Fed. R. Civ. P.; see also Steinberg, 224 F.R.D. at 78.

Adjudicating Hanks' breach of contract claim on a classwide basis would be superior to individual adjudications.  "[S]ubstituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'"  U.S. Foodservice, 729 F.3d at 130 (quoting Advisory Committee Notes for Rule 23); see Amchem, 521 U.S. at 616 (listing non-exhaustive factors to consider).  Where, as here, "individual recovery may be relatively modest," litigating each claim individually would not be an efficient use of "the resources of the judiciary and the parties," and there are no "atypical difficulties in the management" of the breach of contract claim, the requirement of superiority is satisfied.  Aponte v. Comprehensive Health Mgmt., Inc., 10 cv 4825 (PKC), 2011 WL 2207586,

at *12 (S.D.N.Y. June 2, 2011); <u>see</u> Mills Expert Report at 7, 67 (identifying number of individuals and total expected damages amounts).

ii.       Hanks' Claim for Unjust Enrichment

Hanks also seeks class certification for her unjust enrichment claim against Lincoln Life. (Compl. ¶¶47−50). Hanks admits that the claim will be adjudicated based on the laws of forty-nine states, the District of Columbia, and Puerto Rico, and submits a chart grouping state unjust enrichment laws into four categories with allegedly "immaterial" variations between categories that "[a]t most . . . may require a few extra questions on the special verdict form." (Pl.'s Mem. at 23; <u>see</u> <u>id.</u> at 22; Spear Decl. Ex. 44.) Hanks groups the variations in state law into four categories. In the first category are thirteen states[6] and Washington D.C. that have three elements for unjust enrichment: (1) a benefit conferred on defendant; (2) at the plaintiff's expense; and (3) under circumstances that would make retention of the benefit unjust. The second category contains twenty-four[7] states that add a fourth element—that defendant understood it was receiving a benefit. The third category contains eight[8] states that "provide a more general description of unjust enrichment without delineating specific elements, but all are similar to the legal elements in the first category of states." (Spear Decl. Ex. 44.) The fourth category contains four states,[9]

---

[6] California, Colorado, Connecticut, Hawaii, Illinois, Indiana, Iowa, Kentucky, Michigan, Nebraska, New Jersey, South Carolina, and Washington. While Hanks groups New York into this category, she has admitted that New York policyholders were not subjected to a COI rate increase and accordingly are not part of the putative class. <u>See</u> Pl.'s Mem. at 1.

[7] Alabama, Alaska, Florida, Idaho, Kansas, Maine, Maryland, Minnesota, Missouri, Montana, Nevada, New Mexico, North Carolina, Ohio, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Wisconsin, and Wyoming.

[8] Arkansas, Georgia, Massachusetts, Mississippi, New Hampshire, Oklahoma, Oregon, and West Virginia.

[9] Arizona, Delaware, Louisiana, and North Dakota.

and Puerto Rico, that have five elements—enrichment, loss, a connection between the enrichment and the loss, an absence of justification, and absence of a legal remedy.

"A claim . . . can implicate common issues and be litigated collectively, despite the existence of state law variations, so long as the elements of the claim . . . are substantively similar and any differences fall into a limited number of predictable patterns which can be readily handled by special interrogatories or special verdict forms." Rodriguez, 300 F.R.D. at 141 (quoting Steinberg, 224 F.R.D. at 79); see Johnson, 780 F.3d at 141 n.14 ("[C]lass certification may be permissible if the class can be divided into subclasses within which similar legal rules will apply."). Where state law differences in the elements of a claim across multiple states exist, a district court "must do more than take the plaintiff's word that no material differences exist." Langan, 897 F.3d at 97; id. at 98 (instructing district courts to give "precise and great[] depth of analysis" to questions of variations in state law).

Unlike with breach of contract claims, "variations in state law have generally precluded nationwide class certifications based on unjust enrichment theories." Kottler v. Deutsche Bank AG, 05 cv 7773 (PAC), 2010 WL 1221809, at *4 (S.D.N.Y. Mar. 29, 2010); see 1 McLaughlin on Class Actions § 5:60 ("Where certification of a multistate unjust enrichment class is sought, variations in state law also have precluded class certification based on unjust enrichment theories."). But "[r]ejection of nationwide unjust-enrichment classes is not a universal rule . . . ." In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 601 (S.D.N.Y. 2018).

District courts have struggled with whether to certify classes on multi-state unjust enrichment claims based on the significance of state law variations. Most have declined to certify. Compare id.; Hughes v. The Ester C Co., 317 F.R.D. 333, 353 (E.D.N.Y. 2016); In re Actiq Sales and Mktg. Practices Litig., 307 F.R.D. 150, 168−72 (E.D. Pa. 2015); Rapp v. Green Tree Servicing,

LLC, 302 F.R.D. 505, 513−14 (D. Minn. 2014); Rodriguez, 300 F.R.D. at 143; In re Rezulin Prods. Liability Litig., 210 F.R.D. 61, 71 (S.D.N.Y. 2002) (declining to certify multi-state class with unjust enrichment claims), with Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 20 (D. Mass. 2010) (certifying and discussing plan to use special questions to resolve variations in state law); In re Relafen Antitrust Litig., 221 F.R.D. 260, 279 n.17, 288 (D. Mass. 2004) (certifying class for five state unjust enrichment claims spanning Hanks' proposed categories), and In re: McCormick & Co., 217 F. Supp. 3d 124, 142 (D.D.C. 2016) (collecting cases where courts "have reached different outcomes").[10]  The Second Circuit has not resolved the issue.

The Court has reviewed the four proposed groupings of state law on unjust enrichment.  (Spear Decl. Ex. 44.)   In some respects, the elements of a claim for unjust enrichment are "substantively similar [across jurisdictions] and any differences fall into a limited number of predictable patterns."  Rodriguez, 300 F.R.D. at 141.  The distinction between the first and second proposed groupings – the addition of an element that defendant had knowledge it was receiving a benefit – while unlikely to be disputed, is easily accommodated by a special interrogatories to the jury.  The same could be done for the fourth proposed grouping, which adds the elements of absence of a remedy and distinguishes the harm as "absence of justification."  Id.  And the proof used to establish whether Lincoln Life received a benefit, whether it was at the class's expense, and whether it did so in an unconscionable or inequitable manner, would all be applicable classwide.

---

[10] Hanks cites to Rapoport-Hecht v. Seventh Generation, Inc., 14 cv 9087 (KMK), 2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017), as an example of courts frequently certifying multi-state classes for unjust enrichment claims.  (Pl.'s Mem. at 21.)  Rapoport-Hecht granted certification for purposes of settlement; the cited authority "providing for certification in similar circumstances" was also exclusively in the settlement context.  2017 WL 5508915, at *3.  But in such cases, "concerns about whether individual issues would create 'intractable management problems' at trial,'" such as issues presented by variations in state law, are not considered.  In re Am. Int'l Grp, Inc. Securities Litig., 689 F.3d 229, 240 (2d Cir. 2012) (quoting Amchem, 521 U.S. at 620).

Beyond this, however, there are serious reasons to question the predominance of common legal issues for the proposed class. For example, defendants point to three states they claim are improperly grouped – Alabama, Texas (group two), and Oregon (group 3). (Opp. Mem. at 12.) Plaintiff concedes that Alabama and Texas define the nature of what makes a benefit "unjust" more specifically than the other jurisdictions in group 2. (Reply Mem. at 10 ("Texas and Alabama share four elements in common with the other similarly-situated jurisdictions; the sole difference is that Texas and Alabama also require a finding of intentional conduct.").) Compare Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C., 77 So. 3d 139, 145−46 (Ala. 2011); Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992) (requiring proof of obtaining a benefit by unconscionable conduct, such as fraud), with, e.g., Gutteridge v. J3 Energy Grp., Inc., 2017 PA Super 150, 165 A.3d 908, 917 (2017); Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006) (requiring proof that obtained benefit would be inequitable or unconscionable to retain). The variation between how "unjust" conduct must be to satisfy a claim of unjust enrichment, even if the underlying conduct at issue is the same across states, is a material difference. See Rapp, 302 F.R.D. at 514, 519 (comparing differences in the "unjust" requirement across Alabama, Montana, and Arkansas). Moreover, this distinction points to the addition of at least one more grouping, raising serious questions about plaintiff's proposed classifications. See Gelfound v. Metlife Ins. Co. of Conn., 313 F.R.D. 674, 678 (S.D. Fla. 2016) ("The fact that Plaintiff's analysis of the law is not credible is sufficient to find that Plaintiff has failed to meet his burden."); In re Aqua Dots Prods. Liability Litig., 270 F.R.D. 377, 386−87 (N.D. Ill. 2010) (finding no predominance for nationwide unjust enrichment claim where plaintiffs' proposed sub-classes did not account for relevant state law differences).

Variations by state of defenses to unjust enrichment also defeat predominance. For example, there are questions of state law variations as to (1) states that bar unjust enrichment claims when there is an adequate legal remedy, see, e.g., Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017) (discussing Massachusetts law); United States v. Bame, 721 F.3d 1025, 1030 (8th Cir. 2013) (Minnesota law); (2) states that bar unjust enrichment claims when an express contract governs the claims, regardless of whether defendant was party to the express contract, see, e.g., Tuohey v. Chenal Healthcare, LLC, 173 F. Supp. 3d 804, 813 (E.D. Ark. 2016); Ingle-Barr, Inc. v. Scioto Valley Local Sch. Dist. Bd., 953 N.E.2d 363, 366 (Ohio Ct. App. 2011); and (3) states that may not consider unjust enrichment a separate cause of action, see, e.g., Davis v. OneWest Bank N.A., 02-14-264-CV, 2015 WL 1623541, at *1 (Tex. App. Apr. 9, 2015); Foley v. Daniel, 346 S.W.3d 687, 690 (Tex. App. 2009). Cf. 26 Williston on Contracts § 68:5 (4th ed. 2018) (discussing variation between state law for restitution independent of contract liability).[11]

Hanks argues that legal variations in defenses "are not individualized to particular class members and are primarily legal issues that can be decided based on undisputed facts." (Reply Mem. at 10.) That may be true. But Hanks offers no analysis or proposed grouping of which states share common legal elements for the relevant defenses, despite bearing the burden to demonstrate predominance. Novella, 661 F.3d at 148−49. And, as discussed earlier, the Court has identified several inconsistencies with Hanks' proposed grouping of jurisdictions that share similar elements on an unjust enrichment claim. The Court cannot conclude that common issues predominate.

---

[11] Neither party alleges that additional variations, such as the statute of limitations, unclean hands, or laches defenses are relevant in this suit. Cf. Actiq Sales, 307 F.R.D. at 164−66 (discussing additional variances for unjust enrichment claims).

For similar reasons, Hanks has not demonstrated that a class action would be a superior method of adjudicating the unjust enrichment claim because manageability of sub-classes based on variations in state law remains an outstanding concern. Even if common class wide proof would be used, the Court cannot say that aggregating nationwide claims and determining legal distinctions across fifty-one jurisdictions would be a superior method of adjudicating the claim given the evidence on record. See Rodriguez, 300 F.R.D. at 143; Rule 23(b)(3)(D), Fed. R. Civ. P. In sum, Hanks has not met her burden to demonstrate that common issues of fact and law predominate on the unjust enrichment claim. Johnson, 780 F.3d at 148 ("[W]here . . . the variations in state law present insuperable obstacles to determining liability based on common proof, such variations defeat the predominance of common issues and the superiority of trying the case as a class action." (internal quotation marks omitted)).

C.  Rule 23(g)

Rule 23(g)(1) states that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." To appoint class counsel, the court must consider factors such as the work counsel has done, its experience in similar types of litigation, knowledge of the applicable law, and resources available to represent the class. Rule 23(g)(1)(A), Fed. R. Civ. P.

Hanks requests the appointment of Susman Godfrey L.L.P. as class counsel. Susman Godfrey was appointed as interim class counsel on February 9, 2017. (Doc 41). The firm has provided competent representation for Hanks since this action's commencement. It has successfully conducted discovery and its submissions reflect knowledge of the law governing Hanks' claims and familiarity with class action procedures. Its performance in the present case demonstrates competence to protect the interests of the class.

Hanks' counsel has significant experience litigating class actions. (Declaration of Seth Ard Ex. B at 3, Ex. C at 4; Doc 38.) Plaintiff's counsel has demonstrated that it has adequate resources to litigate this action and is experienced in litigating class actions generally. (See id. Ex. A at 2−5.) The Court appoints Susman Godfrey as class counsel.

CONCLUSION

Hanks' motion for class certification is GRANTED for the breach of contract claim and DENIED for the unjust enrichment claim. The Clerk is directed to terminate the relevant motions (Docs 85, 98).

The law firm of Susman Godfrey L.L.P. is appointed to act as class counsel. Within 21 days, class counsel shall submit a proposed form of notice to class members and a proposed plan for distributing notice.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
March 13, 2019