UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HELEN HANKS, on behalf of herself and all
others similarly situated,

                         Plaintiff,                      16-cv-6399 (PKC)

        -against-                          OPINION
                                             AND ORDER
VOYA RETIREMENT INSURANCE AND
ANNUITY COMPANY, formerly known as
Aetna Life Insurance and Annuity Company,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

The Gonzalez Family Irrevocable Trust dated August 23, 1994 (the "Trust"), by its trustee C. Anthony Gonzalez, is a member of the certified class in this action. Approximately three months after the Court-imposed deadline for opting out of the class, Gonzalez, on behalf of the Trust, submitted a request to do so. He now moves for leave to opt-out beyond the deadline because of excusable neglect. For the reasons to be explained, the motion is denied.

BACKGROUND

In March 2019, the Court granted plaintiff Helen Hanks' motion for class certification, and thereafter directed notice be sent to prospective class members. (Docs 110; 122). Class members requesting exclusion were required to send a letter to the claims administrator, JND Legal Administration LLC ("JND"), no later than 45 days after the Notice Date, which was defined as 21 days after Class Counsel received a list of class members from Defendant Voya Retirement Insurance and Annuity Company ("Voya"). (Doc 122 ¶¶ 5, 9). On May 23, 2019, Voya provided Class Counsel with a list of class members and their last known addresses, which

set the Notice Date as June 13, 2019.  (Docs 130; 168 ¶ 2).  Thus, the date to opt-out was July 29, 2019.

Pursuant to the Court's order approving notice, JND mailed the short form notice via first-class regular U.S. mail to 47,308 potential class members.  (Docs 122 ¶ 5; 169 ¶ 4).  The notice stated that "[y]ou may exclude yourself from the lawsuit by sending a letter to the Notice Administrator requesting exclusion from this lawsuit" and that "[b]y doing nothing, the certification ruling means that any judgment in this case . . . will bind all Class members who do not timely elect to be excluded."  (Doc. 120-1).

The list of class members provided by Voya included an address for the Trust in Daytona Beach Shores, Florida.  (Doc 168 ¶ 2).  On June 13, 2019, JND mailed class notice to the Trust at that address, and the notice was not returned as undeliverable.  (Doc 169 ¶¶ 5–6). Gonzalez did not opt-out by the July 29, 2019 deadline.  (Doc 165 ¶ 2).

Gonzalez claims that he never received the notice, and therefore did not review it before the exclusion deadline and was not otherwise aware of the class action.  (Docs 165 ¶ 2; 173 ¶ 6).  According to Gonzalez, correspondence regarding the policy owned by the Trust was "sent to the shared mailbox of my mother's condominium complex."  (Doc 165 ¶ 22).  Gonzalez states that his now deceased mother told him that she did not recall receiving or reviewing the notice or any other correspondence regarding the class action.  (Id.)

Gonzalez maintains that the process by which he learned about the class action started in late June or early July 2019 after his mother received a letter from Defendant Lincoln Life & Annuity Company of New York ("Lincoln") stating that the Policy had entered a grace period.  Notably, the correspondence was sent to the same Florida address as the class notice.  (Doc 168 ¶ 5 & Ex. 3).  After learning the policy had entered the grace period, Gonzalez contacted a

Lincoln representative, but the representative did not inform him about the class action. (Docs 165 ¶ 9; 173 ¶ 7). In early September 2019, Gonzalez first learned about the pendency of this action when his counsel sent him the website for class members established by JND. (Doc 173 ¶ 8). On September 9, 2019 Gonzalez emailed JND asking whether the Trust was a member of the Class. JND responded on September 13, 2019, confirming that the Trust was a class member. (Docs 165 ¶¶ 14-15; 169 ¶¶ 7–8).

Gonzalez, acting in his capacity as trustee, filed a direct action against Lincoln and Voya on October 22, 2019.[1] He then sent an untimely exclusion request to JND on October 25, 2020. (Docs 165 ¶ 19; 169 ¶ 9).

The allegations of Gonzalez's complaint begin with a narrative similar to Hanks setting forth a theory of why the premium increases were not in accordance with the contract but then take a sharp turn in another direction implying that the premium hikes were the reason that the policy was permitted to lapse silently. Gonzalez, No. 19-cv-9750, Dkt. 1 ¶¶ 1–9 & 13. As one form of relief sought, Gonzalez seeks to have the policy reinstated. Id. at 25.

DISCUSSION

    I.    Legal Standard for Excusable Neglect.

Gonzalez argues that his failure to submit a timely request to opt-out of the class should be excused pursuant to Rule 6(b)(1)(B), Fed. R. Civ. P., which states "the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

The determination of whether a party's failure to meet a deadline is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's

---

[1] C. Anthony Gonzalez, as trustee for the Gonzalez Family Irrevocable Trust Dated August 23, 1994 v. The Lincoln Life & Annuity Company of New York, et al., No. 19-cv-9750 (PKC).

omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 395 (1993). Factors include prejudice to the opposing party, the length of delay, its impact on judicial proceedings, the reason for the delay, whether the delay was within the movant's "reasonable control," and whether the movant acted in good faith. Id.

The Second Circuit has "'taken a hard line' in applying the Pioneer test." In re Enron Corp., 419 F.3d 115, 122 (2d Cir. 2005); cf. In re WorldCom, Inc., 708 F.3d 327, 337–38 (2d Cir. 2013) (explaining "hard line" scrutiny of excusable neglect in missing appellate deadlines). It has observed that the reason for delay is the most critical consideration, and "that the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule . . . ." Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (quotation marks and alteration omitted). This is true even if all other factors tip in the movant's favor. Id. at 366–67. When a movant's failure to meet a clear deadline was within his control, the motion will be denied, even in instances of good-faith ignorance of a rule, or when an ambiguous rule functioned as "a 'trap' for the unsuspecting litigant" and has since been amended. Id.

II. Gonzalez has not established that a failure to submit a timely opt-out request constituted excusable neglect.

Gonzalez claims that his exclusion request was untimely because he did not receive notice of the class action in the mail and was otherwise not aware of this action. Gonzalez did not directly receive policy correspondence, and instead the address of record for the policy was associated with a beneficiary, Gonzalez's mother, who told him before her death in March 2020 (Doc 173 ¶ 11) that she did not recall receiving the notice when later asked by Gonzalez. As trustee responsible for the policy owned by the Trust, Gonzalez could have exercised greater diligence than to have a "shared mailbox" at his mother's condominium complex receive important policy correspondence. See Supermarkets General Corp. v. Grinnell Corp., 59 F.R.D. 512, 514

4

(S.D.N.Y. 1973) ("The failure of the internal procedures of the plaintiffs to see that the notice reached the proper person is no excuse."). As noted, he does not dispute that he learned of a letter from Lincoln notifying him that the policy had entered a grace period even though it was mailed to the same address as the class notice.

The declaration of the CEO of the claims administrator asserts that according to its records notice was sent to the address for the Trust's policy and not returned as undeliverable. (Keough Decl. ¶¶ 5–6; Doc 169). The conclusory denial of Gonzalez, who does not claim personal knowledge of the mail received at that address, is not sufficient to establish that the mailed notice of the class action was not delivered. (Gonzalez Reply Decl. ¶ 6; Doc 173).

The fact that Gonzalez, the trustee, did not in fact receive the class notice is not determinative. In re Adelphia Communications Corp. Sec. Litig., 271 Fed. App'x. 41, 44 (2d Cir. 2008) ("[F]or due process to be satisfied, not every class member need receive actual notice [of the class settlement], as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'"); In re Prudential Sec. Inc. Ltd. Partnerships Litig., 164 F.R.D. 362, 369 (S.D.N.Y), aff'd 107 F.3d 3 (2d Cir. 1996) ("[N]otice by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not receive notice.").

Gonzalez places additional blame on a Voya customer service representative who failed to alert him of the pending class action in July 2019 when he made inquiry to "determine why Lincoln was charging so much for the Policy" and request annual statements. (Gonzalez Decl. ¶ 9, Doc 165). But a routine inquiry regarding policy costs, does not impose a duty on a defendant's employee to inform the inquiring person about the pendency of a class action concerning the manner in which premiums are calculated. Indeed, instructions from a defendant

5

in a certified class to its employees to affirmatively raise the subject of a pending class action with potential class members and alert them to the opportunity to opt-out would be fraught with peril and leave the employer-defendant open to claims that their employees' actions were designed to dissuade participation in the class action.

By September 13, 2020, forty-six days after the deadline to opt-out expired, Gonzalez confirmed with the claims administrator that the Trust was a member of the class. Even then, Gonzalez failed to file an exclusion request until approximately five weeks later, a period by which he had engaged counsel. The declarations of Gonzalez and his counsel do not offer an explanation beyond a need to evaluate his claim. With full awareness that the opt-out deadline had passed, this portion of the delay was entirely within the control of Gonzalez. The Court further notes that while Gonzalez submitted an untimely opt-out request to the claims administrator in October 25, 2019, he did not seek leave of the Court to file belatedly an opt-out request until the January 23, 2020 status conference in his newly-filed action. (Doc 25).

Courts in this Circuit have concluded that similar lengths of delay do not amount to excusable neglect. See Shumsker v. Citigroup Global Markets Inc., 569 Fed. App'x 16, 18 (2d Cir. 2014) (affirming district court's conclusion of no excusable neglect where the moving party "filed her opt-out form one month after the deadline and did not request leave to enlarge the time for her to file for seven additional months"); In re Adelphia Communications Corp. Sec. & Deriv. Litig., 271 Fed. Appx. at 44 ("Elkmont did not demonstrate excusable neglect because, despite the fact it was aware of the settlement only one day after the opt out deadline, it still waited a full month to file its motion for an extension of time."); see also In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 129–30 (2d Cir. 2011) (excusable neglect not established when movant lacking formal education did not comply with clear terms of notice and relied on the advice of an

6

adversary); In re PaineWebber Limited Partnerships Litig., 147 F.3d 132, 135–36 (2d Cir. 1998) (finding a movant's failure to meet an opt-out deadline due to hospitalization does not establish excusable neglect, when the movant waited an additional nine months before attempting to opt-out of the class).

The Court concludes that the length and reasons for Gonzalez's delay do not support a claim of excusable neglect. Further, at the time Gonzalez filed the motion to opt-out of the certified class in this action, fact discovery had been closed and the summary judgment motion fully briefed. The status of the class action litigation does not support the grant of a late opt-out.

Gonzalez argues that he acted in good faith in failing to file a timely opt-out request. The evidence does not suggest that the reason for Gonzalez's delay was to gain a tactical advantage or that missing the opt-out deadline was intentional. Gonzalez's belief that a direct action against Voya would provide an opportunity for more complete relief supports that he acted in good faith. Specifically, Gonzalez contends that by remaining a class member he would lose the opportunity to seek reinstatement of the policy, which has lapsed, and be unable to recover the value of lost death benefits. Other than supporting a claim of good faith, Gonzalez does not cite cases to support the proposition that the potential to achieve a remedy in a direct action should be considered under the Pioneer factors. See In re Currency Conversion Fee Antitrust Litig., 264 F.R.D. 100, 118–19 (S.D.N.Y. 2010) ("A class action settlement may 'prevent class members from subsequently asserting claims relying on a legal theory different from that relied on in the class action complaint, but depending on the very same set of facts.'"). Nonetheless, the Court concludes that the good faith factor under the Pioneer analysis weighs slightly in favor of excusable neglect.

Gonzalez contends no prejudice would result from his opting-out of the class because there has not yet been a final judgment or settlement in the action. When considering

prejudice to class action defendants, courts in this District have accounted for the impact on the value of a settlement. See In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d at 130 ("[Defendant] would suffer prejudice if [the movants] were permitted to opt out of the Class Settlement three years late, as it would be exposed to liability that it had every reason to think had been foreclosed by the entry of the Settlement Agreement in federal court."); In re LIBOR-Based Fin. Instruments Antitrust Litig., No. 11-md-2262 (NRB), 2019 WL 3006262 (S.D.N.Y. July 10, 2019) ("Settling Defendants would indisputably suffer prejudice from reviving claims that were previously and properly released in exchange for consideration totaling $590 million."). It does not follow, however,[2] that the Court should permit untimely opt-out requests because of a lack finality in the action. The deadline for submitting an opt-out request was clear. In general, Voya should be able to move forward in this litigation with certainty around the size of the class. This is consistent with the Second Circuit's "hard line" approach to the Pioneer Test. In re Enron Corp., 419 F.3d at 122; see also In re Painewebber Limited Partnerships Litig., 147 F.3d at 138 ("Opt-out deadlines ensure that parties to a class action can rely on the membership of a class becoming fixed by a specified date and that such members will be bound by the resulting outcome of the legal proceedings."). The Court concludes that the prejudice factor is neutral.

CONCLUSION

Under the totality of the circumstances and balancing all of the relevant considerations, Gonzalez's motion for leave to opt-out of the class after the exclusion date is DENIED. The Clerk is directed to terminate this motion. (Doc 162).

---

[2] The Court expresses no view on the disposition of any claim Gonzalez submits to the claims administrator.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 6, 2020