## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HELEN HANKS, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY, formerly known as Aetna Life Insurance and Annuity Company, <br><br> Defendant. | Civil Action No. 16-cv-6399 (PKC) |

## <u>MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARD</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................6

    I.    Class Counsel Investigated the COI Increase and Promptly Filed the Detailed Complaint ............................................................................................6

    II.    Class Counsel Engaged in Extensive Fact and Expert Discovery ..........................8

    III.    Class Counsel Overcame Voya's Hard-Fought Efforts at the Class-Certification and Summary-Judgment Stages ..........................................................11

    IV.    Class Counsel Vigorously Litigated the Case to the Eve of Trial ........................12

    V.    Class Counsel Negotiates the "Highly Successful" Settlement ............................13

ARGUMENT ............................................................................................................16

    I.    Class Counsel's Fee Request is Reasonable ........................................................16

        A.    Class Counsel is Entitled to Fees from the Common Fund ......................16

        B.    The Requested Fee is Reasonable under the Percentage Method..............16

            1.    The Percentage Approach is Favored ............................................16

            2.    A Fee of 25.7% of the Overall Settlement Benefits is Fair and Reasonable ..........................................................................18

        C.    The Requested Fee Is Reasonable Under the Lodestar "Crosscheck" ........................................................................................22

        D.    The *Goldberger* Factors Support Class Counsel's Fee Request ...............24

            1.    Labor Expended By Counsel (*Goldberger* Factor 1)....................25

            2.    Magnitude and Complexity of the Litigation (*Goldberger* Factor 2) ................................................................26

            3.    The Risk of the Litigation (*Goldberger* Factor 3) ........................27

            4.    The Quality of the Representation (*Goldberger* Factor 4) ........................................................................................30

            5.    Requested Fee In Relation to the Settlement (*Goldberger* Factor 5) ........................................................................................31

        6.      Public Policy Considerations (*Goldberger* Factor 6)....................31

    E.      The Reaction of the Class Supports the Requested Fee............................32

II.    Class Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Settlement and Should Be Reimbursed...........................32

III.    An Incentive Award for Plaintiff Helen Hanks is Appropriate ............................34

CONCLUSION.................................................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*37 Besen Parkway, LLC v. John Hancock Life Insurance Co.*,
 15-cv-9924 (PGG), Dkt. 164 (S.D.N.Y. Mar. 18, 2019) ............................................... *passim*

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) .........................................................................35

*Anwar v. Fairfield Greenwich Ltd.*,
 No. 09-CV-118 VM, 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ........................................34

*Aros v. United Rentals, Inc.*,
 2012 WL 3060470 (D. Conn. July 26, 2012) .........................................................................18

*Bd. of Tr. of AFTRA Ret. Fund v. J.P. Morgan Chase Bank, N.A.*,
 No. 09 CIV. 686 SAS, 2012 WL 2064907 (S.D.N.Y. June 7, 2012) .....................................35

*Beckman v. KeyBank, N.A.*,
 293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................................................24

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ..........................................................................35

*Blessing v. Sirius XM Radio Inc.*,
 507 F. App'x 1 (2d Cir. 2012) ...............................................................................................19

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) ...............................................................................................................16

*Bozak v. FedEx Ground Package Sys.*,
 No. 3:11-cv-00738-RNC, 2014 WL 3778211 (D. Conn. July 31, 2014) ..............................18

*City of Providence vs Aeropostale, Inc.*,
 No. 11 Civ. 7132 (CM), 2014 WL 1883494 ..........................................................................29

*Cornwell v. Credit Suisse Grp.*,
 No. 1:08-cv-03758 (VM), slip op. (S.D.N.Y. July 20, 2011) .................................................24

*Cunningham v. Cornell Univ.*,
 Case No. 16-cv-06525-PKC-JLC, Dkt. 445 (S.D.N.Y. Jan. 15, 2021) (Castel, J.) ................20

*Davis v. J.P. Morgan Chase & Co.*,
 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) ..........................................................................24

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................31

*Fleisher v. Phoenix Life Ins. Co.*,
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ............................................ *passim*

*Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
    925 F.3d 63 (2d Cir. 2019).................................................................................16

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998)...............................................................................22

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ......................................................20

*Goldberger v. Integrated Res.*,
    209 F.3d 43 (2d Cir. 2000)........................................................................ *passim*

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
    330 F.R.D. 374 (S.D.N.Y. 2019) .......................................................................11

*Hanks v. Voya Ret. Ins. & Annuity Co.*,
    492 F. Supp. 3d 232 (S.D.N.Y. 2020)..............................................................4, 6

*Hayes v. Harmony Gold Min. Co., Ltd.*,
    509 F. App'x 21 (2d Cir. 2013) .........................................................................17

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...............................................32, 34

*In re Abbott Labs. Sec. Litig.*,
    1995 WL 792083 (N.D. Ill. July 3, 1995)...........................................................29

*In re Apollo Group Inc. Sec. Litig.*,
    2012 WL 1378677 (D. Ariz., Apr. 20, 2012) ......................................................21

*In re Auto. Parts Antitrust Litig.*,
    2017 WL 3525415 (E.D. Mich. July 10, 2017) ...................................................23

*In re Bisys Sec. Litig.*,
    2007 WL 2049726 (S.D.N.Y. July 16, 2007) ......................................................30

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014)..................................................................24

*In re Credit Default Swaps Antitrust Litig.*,
    2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).......................................................24

*In re CRT Antitrust Litig.*,
   2016 WL 183285 (N.D. Cal. Jan. 14, 2016) ...................................................................21

*In re Deutsche Tele-kom AG Sec. Litig.*,
   2005 WL 7984326 (S.D.N.Y. June 14, 2005) ...............................................................24

*In re Domestic Drywall Antitrust Litig.*,
   No. 13-MD-2437, 2018 WL 3439454 (E.D. Pa. July 17, 2018) ................................21, 30

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp.3d 394 (S.D.N.Y. 2018) ...........................................................................16

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................22

*In re High-Crush Ptrs. L.P. Secs. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................................................32

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...........................................................................20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) ...............................................................33

*In re Lloyd's Am. Tr. Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..............................................................21

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................................28

*In re Mun. Derivatives Antitrust Litig.*,
   2016 WL 11543257 (S.D.N.Y. July 8, 2016) ................................................................20

*In re Nigeria Charter Flights Litig.*,
   2011 WL 7945548 (E.D.N.Y. Aug. 25, 2011) ...............................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................................17, 19

*In re Pfizer Inc. Sec. Litig.*,
   No. 04-cv-09866 (LTS), Dkt. No. 727 (S.D.N.Y. Dec. 21, 2016) ....................................21

*In re Solodyn Antitrust Litig.*,
   No. 14-md-2503 (D. Mass. July 18, 2018) ....................................................................21

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...............................................................22, 23, 28

*In re U.S. Foodservice, Inc. Pricing Litig.*,
  2014 WL 12862264 (D. Conn. Dec. 9, 2014) ....................................................................20

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ....................................................................................22

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd* 396 F.3d 96 (2d Cir. 2005) ...........................19

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .....................................................................35

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ................................28

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................31

*Johnson v. City of N.Y.*,
  2010 WL 5818290 (E.D.N.Y. Dec. 13, 2010) .....................................................................21

*Kifafi v. Hilton Hotels Ret. Plan.*,
  999 F. Supp. 2d 88 (D.D.C. 2013) .....................................................................................35

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) .............................................................................................22

*Leonard, et al. v. John Hancock Life Ins. Co. of N.Y., et al.*,
  Case No. 18-CV-4994, Dkt. 213 (S.D.N.Y. March 17, 2022) ..............................................21

*Loc. 1180, Commc'ns Workers of Am., AFL-CIO v. City of N.Y.*,
  392 F. Supp. 3d 361 (S.D.N.Y. 2019) ................................................................................30

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................................................2, 30

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) .............................................................................................18

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d 448 (D.N.J. 2008) ....................................................................................19

*McDaniel v. Cty. of Schenectady*,
  595 F.3d 411 (2d Circ. 2010) ...........................................................................................21

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .........................................................................................................22

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .......................................................20

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)...................................................................21

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
    2016 WL 3369534 (S.D.N.Y. May 2, 2016) ..........................................................24

*Pantelyat v. Bank of Am., N.A.*,
    2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) .....................................................17, 23

*Ret. Sys. v. Bank of Am. Corp.*,
    318 F.R.D. 19 (S.D.N.Y. 2016) .............................................................................33

*Seijas v. Republic of Argentina*,
    2017 WL 1511352 (S.D.N.Y. Apr. 27, 2017).........................................................31

*Sheppard v. Consol. Edison Co. of N.Y.*,
    2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002)..........................................................19

*State of W. Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ...............28

*Sukhnandan v. Royal Health Care of Long Island LLC*,
    2014 WL 3778173 (S.D.N.Y. July 31, 2014) .........................................................29

*Torres v. Gristede's Operating Corp.*,
    519 F. App'x 1 (2d Cir. 2013)................................................................................19

*Varljen v. H.J. Meyers & Co.*,
    2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)...........................................................34

*Velez v. Novartis Pharm. Corp.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ..........................................................1

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................................17, 24

**Rules**

Federal Rule of Civil Procedure 23 ........................................................... 11, 14, 15

Federal Rule of Civil Procedure 30 ....................................................................... 8

Federal Rule of Civil Procedure 30(b)(6) ..........................................................9, 27

**Treatises**

Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1803 (3d ed.)........................................................16

American Law Institute,
    Principles of the Law of Aggregate Litigation § 3.13 (2010)..................................................19

Federal Judicial Center, Managing Class Action Litigation:
    A Pocket Guide for Judges 35 (3d ed. 2010) .......................................................................18

## INTRODUCTION

After five years of intense, hard-fought litigation through class certification, summary judgment, motions *in limine*, the Final Pretrial Conference, and having recovered an outstanding result of over $118.73 million in total relief for the benefit of the Class, Court-appointed Class Counsel Susman Godfrey L.L.P. respectfully applies for an award of attorneys' fees of $30,524,637.87, which is 25.7% of the gross settlement benefit (or using a less-accepted and more conservative methodology, 33% of the cash component of the settlement viewed in isolation), a figure well within the range approved by courts in this Circuit, including in other cost-of-insurance ("COI") cases. *See, e.g., Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *10–11, *13 (S.D.N.Y. Sept. 9, 2015) ("*Phoenix COI*") (approving a fee award equal to 33-1/3% of the cash portion of the settlement); *37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*, 15-cv-9924 (PGG), Dkt. 164 at 20:08–10 (S.D.N.Y. Mar. 18, 2019) ("*Hancock COI I*") (approving fee of case that settled before class certification of 30% of the total settlement benefits, equal to a lodestar multiplier of 6.92); *see generally Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (the "standard fee in complex class action cases" where "plaintiffs' counsel have achieved a good  recovery for the class" ranges "from 20 to 50 percent of the gross settlement benefit" and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater.").

The Settlement provides cash relief of up to $92.5 million available to potential Class Members, equal to **76% of all COI overcharges** that Defendant Voya Retirement Insurance and Annuity Company ("Voya") and its reinsurer the Lincoln Life and Annuity Company of New York ("Lincoln") collected through May 31, 2021. *See* Declaration of Seth Ard ("Ard Decl.") ¶¶ 30–31. The cash will be sent directly to Class Members, who will not have to fill out a claim form, and no money from the Final Settlement Fund will revert to Voya or Lincoln.

1

The Settlement also provides significant prospective relief that would not even have been achievable had the Class prevailed at trial. That relief is worth an additional $26.23 million to the Class, and includes a guarantee by Voya and Lincoln *not* to impose a new, more expensive COI rate scale for five years even in the face of a worldwide pandemic (or any new variant to come) that some insurance companies claim has caused their costs to skyrocket. This hard-fought result was reached after four in-person mediations, the last of which was facilitated by Robert A. Meyer, an experienced and highly respected mediator from JAMS, who calls the settlement a "highly successful result" for the Class.[1]

This Settlement is outstanding by any measure, not least under the "critical element" courts consider in awarding fees: the result obtained for the Class. *See Maley v. Del Glob. Techs. Corp*., 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002). The Settlement Fund—equal to 76% of the COI overcharges—easily bests what Judge McMahon called "one of the most remunerative settlements this court has ever been asked to approve" in a prior COI overcharge case where the cash fund equaled 68.5% of the overcharges. *Phoenix COI*, 2015 WL 10847814, at *10–11, *13. There, Judge McMahon approved a fee award equal to 33-1/3% of the cash portion of the settlement, considered in isolation from other components of the settlement. *Id.* at *18. And just three years ago, in a COI case against John Hancock, Judge Gardephe remarked that a settlement reached before a ruling on class certification providing for 42% of the COI overcharges was "quite extraordinary" and awarded a fee of 30% of total settlement benefits. *See Hancock COI*, Dkt. 164 at 20:08–10.[2]

---

[1] *See* Dkt. 283 (January 19, 2022 Declaration of Robert A. Meyer) at ¶ 7.
[2] *See also id.*, Dkt. 145 (Pltf. Fee Motion) at 19 (noting that the Settlement "represents at least 42% of the high-end damages calculated by Plaintiff's expert").

The eve-of-trial Settlement achieved here is a result of the tenacious prosecution of the case by Class Counsel. As this Court is well aware, the litigation was hard-fought. All told, Class Counsel invested almost $8.5 million in time and money into this case on a fully contingent basis, representing nearly 12,000 hours of work, with the real possibility of getting nothing in return. *See* Ard Decl. ¶¶ 36–37. Among other things, Class Counsel:

- Reviewed over 350,000 pages of documents and data sets, including numerous actuarial tables, policy-level data reflecting the historical credits and deductions to the account value of all class members' policies, and thousands of spreadsheets;

- Took and defended more than twenty highly technical depositions;

- Served 69 requests for production, 25 interrogatories, and 30 requests for admission on both Voya and Lincoln;

- Responded to Voya's and Lincoln's 19 requests for production, 6 interrogatories, and 58 requests for admission;

- Assisted in the preparation of eight detailed expert reports totaling 274 pages supported by more than 50,000 pages of exhibits, attachments, and appendices;

- Prepared class certification briefing totaling 35 pages supported by 50 exhibits;

- Prepared summary judgment briefing totaling 100 pages supported by 83 exhibits;

- Briefed and argued thirteen motions *in limine* (9 from Plaintiff, 4 from Voya), which included 112 pages of briefing supported by 49 exhibits;

- Filed proposed jury instructions, *voir dire* questions, verdict forms, and a Final Pretrial Conference Statement that included deposition designations, trial witness lists, and trial exhibits lists, all of which were on file when the parties attended and participated in the Final Pretrial Conference itself,

- Prepared for and conducted a full-day mock trial with a nationally-renowned mock trial consultant and three panels of mock jurors;

- Participated in four in-person mediations with Voya and Lincoln, the first three of which were unsuccessful but tenaciously continued to negotiate afterwards with the help of JAMS's Robert Meyer, to secure the outstanding result here.

*See id.* ¶¶ 9–11, 15, 17, 20, 22–29.

The contingency risk posed by this case was very high from the outset, and Plaintiff overcame many obstacles—including class certification, summary judgment, and motions *in limine*—in reaching this outstanding result. For example, the New York Department of Financial Services ("NYDFS") had expressed the opinion that the increase breached the "Class Basis" provisions in the policies, but the Court ultimately rejected this NYDFS theory of breach, as Voya trumpeted in its motion *in limine* filings. *See* Dkt. 191 (Def. MIL No. 2) at p. 8 ("This Court has already rejected DFS's legal position as a matter of contract law."). Had Class Counsel limited itself to that theory, the certified Class would have lost in its entirety and received nothing. Instead, Class Counsel invested extensive time, effort, and money developing other, unique theories of breach not pursued by the NYDFS nor any other insurance regulator or private party. *See* Ard Decl. ¶ 16. Indeed, Plaintiff filed the Complaint before even learning of NYDFS's investigation and findings.  *See id.* ¶ 7. Class Counsel's zealous work and advocacy for the Class was essential to the success of the litigation, as the Court denied summary judgment on one of Plaintiff's unique theories developed during this litigation, which the Court held was supported by the extensive "evidence and expert opinions" that Class Counsel developed during discovery. *See id.* ¶ 21; Dkt. 174 ("SJ Order") at 23–24.[3]

In evaluating litigation risk, courts also consider the strength of defense counsel. Voya and Lincoln, which were vigorously represented by two highly-regarded law firms—litigation counsel from both Boies Schiller Flexner LLP and Fried, Frank, Harris, Shriver & Jacobson LLP—and numerous lawyers (nine lawyers representing Voya surfaced and interacted with Class Counsel,

---

[3] Published as *Hanks v. Voya Ret. Ins. & Annuity Co.*, 492 F. Supp. 3d 232 (S.D.N.Y. 2020).

with untold others working behind the scenes[4]) made the case even more challenging and onerous to litigate. The Court recognized the quality of the work by all sides at the pretrial conference:

> I want to commend you all for the work done on the pretrial order and the motions *in limine*. You are well organized, which is important, and very clear in your briefing. And so I'm very pleased, I'm very happy to have you as lawyers appearing before me, because I don't always get that. So this is really great.

Ard Decl., Ex. 4 (5/12/21 FPTC Transcript) at 43:12–17.

By relentlessly pushing this certified class action all the way up to the brink of trial, Class Counsel maximized the settlement value to the Class. *See Phoenix COI*, 2015 WL 10847814, at *21 ("The risk of no recovery in complex cases of this type is real, and is heightened when Class Counsel opt to fight up to the eve of trial, in order to achieve the very best result for the class, rather than reaching a less attractive settlement early in the litigation."). The Settlement is also outstanding when considering the significant litigation risks that remained for the Class at the time of settlement. For example, Voya aggressively contested Plaintiff's damages estimate (which included a still-pending motion *in limine* for which the Court ordered supplemental briefing following the Final Pretrial Conference) and argued that even if Voya were liable, only a small subset of the Policies were damaged and only to a minimal degree. *See* Dkt. 202 (Def. Damages MIL) at 1–11; Ard Decl., Ex. 4 (5/12/21 FPTC Transcript) at 26:23–27:9. In other words, even if the Class won on liability at trial—itself far from guaranteed—nearly all damages could have been wiped out completely.

For these reasons, Class Counsel respectfully moves this Court for an award of attorneys' fees equal to 25.7% of the gross settlement benefits, or 33% of the Final Settlement Fund viewed in isolation (which is defined as the gross $92.5 million fund minus any *pro-rata* reductions for

---

[4] Outside counsel representing Voya and Lincoln in this class action litigation included: Alan Vickery, Andrew Villacastin, Evelyn Fruchter, Jack G. Stern, John F. LaSalle of Boies Schiller; and Motty Shulman, Robin Henry, Bryan McIntyre, Glenn Radecki of Fried Frank.

opt-outs), totaling $30,524,637.87 as of March 31, 2022 (due to three opt outs). *See* Ard Decl. ¶ 41.[5]

This request is well within the range approved by Courts in this Circuit, especially for an outstanding settlement reached on the eve of trial. Class Counsel also seeks reimbursement for $2,183,929.18 in litigation expenses, as well as a $25,000 incentive award for Plaintiff Helen Hanks to compensate her for her time and efforts in bringing this case to a successful resolution. The requested award is warranted by the outstanding results achieved for the Class through the efforts of Class Counsel, and the enormous risks taken and overcome in litigation that lasted more than half-a-decade brought entirely on a contingency fee basis.

## BACKGROUND

I.   **Class Counsel Investigated the COI Increase and Promptly Filed the Detailed Complaint**

The Class consists of owners of over 46,000 universal life insurance policies ("Class Policies"), comprising 18 product lines, issued by Aetna Life Insurance and Annuity Company ("Aetna"), now Voya, between 1983 and 2000.[6] Each Class Policy contains a section titled "Cost

---

[5] The presently-estimated non-reversionary cash fund—referred to herein as the "Final Settlement Fund"—is $92,498,902.63 after *pro-rata* reduction for opt outs as of March 31, 2022. *See id.* Only 3 policyholders with 0.0012% of total overcharges at issue have opted out to date. *See id.* The opt out period remains open until April 19, 2022. Although courts generally award fees based on the total benefits *available* to the class, regardless of opt outs, Class Counsel agrees to cap its fee request to 33% of the final cash number (exclusive of the substantial non-monetary benefits) if additional opt outs lower the amount of the Final Settlement Fund by any amount. Class Counsel will update the Court on this amount in its reply brief due June 22, 2022.

[6] Specifically, the Class is "the class certified by the Class Certification Order, more specifically '[a]ll owners of universal life (including variable universal life) insurance policies issued by Aetna Life Insurance and Annuity Company ("Aetna") that were subjected to the cost of insurance rate increase announced in 2016,'" with the exclusion of the "Class Certification Opt-Outs; Class Counsel and their employees; Voya and Lincoln; officers and directors of Voya and Lincoln, and members of their immediate families; the heirs, successors or assigns of any of the foregoing; the Court, the Court's staff, and their immediate families." *See* Ard Decl., Ex. 1 (Settlement Agreement) § 4. The Class Certification Opt Outs are "the policies that timely and validly opted-

of Insurance Rate" with express limitations on when and how COI rates used to calculate the monthly COI charges can be adjusted. Plaintiff's policy, which is representative of the language included in all Class Policies, states in relevant part:

> The monthly Cost of Insurance rates may be adjusted by Aetna from time to time. Adjustments will be on a class basis and will be based on Aetna's estimates for future cost factors, such as mortality, investment income, expenses and the length of time policies stay in force. Any adjustments will be made on a uniform basis. However, the rate during any policy year may never exceed the rate shown for that year in the Table of Guaranteed Maximum Insurance Rates in this policy. Those rates are based on the 1958 Commissioners Standard Ordinary Mortality Table, male or female.

*See* Ard Decl., Ex. 3 (Hanks Policy) at 7. In June 2016, Voya, at the recommendation of its reinsurer Lincoln, raised COI rates on the Class Policies. *See* SJ Order at 5–6.

Prior to filing the complaint, Class Counsel conducted a comprehensive investigation of publicly available information concerning the rate hike and whether it was made in compliance with the provisions described above. *See* Ard Decl. ¶¶ 6–8. In consultation with industry experts, Class Counsel studied the language of the Aetna policy forms, the trends in actuarial assumptions from the time the policies were issued as detailed in Voya's and Lincoln's filings with insurance regulators, and the information Voya and Lincoln provided about the increase to its policyholders to assess whether the COI increase was permitted by the policies and other applicable laws. *See id.* ¶ 7. As a result of this investigation—which took place before Plaintiff and Class Counsel even knew about or had any information regarding the NYDFS's confidential investigation—Class Counsel drafted and filed the highly detailed Complaint on August 11, 2016 (less than ten weeks after the COI increase was implemented). Dkt. 1; Ard Decl. ¶¶ 7–8. Neither Voya nor Lincoln moved to dismiss the fulsome and well-pleaded Complaint. *See* Dkts. 27–28 (Nov. 1, 2016

out during the notice period following the" Court's March 13, 2019 class certification order (Dkt. 110). *See id.* §§ 5–6.

answers). The Court appointed Class Counsel as Interim Class Counsel on February 8, 2017. Dkt. 41.

## II.     Class Counsel Engaged in Extensive Fact and Expert Discovery

Class Counsel thoroughly and aggressively pursued the case against Voya on behalf of Plaintiff and the putative class in discovery. Class Counsel deposed 4 corporate representatives and 14 individuals for Voya and Lincoln, which covered highly technical data and actuarial concepts, including more than thirty Federal Rule of Civil Procedure 30(b)(6) topics. *See* Ard Decl. ¶ 10. Class Counsel's depositions included Voya's Chief Financial Officer, Chief Actuary, and the Chief Risk Office for individual life, annuities, and employee benefits, and Lincoln's Senior Vice Presidents for Life Solutions, Financial Management and Strategy for Life Solutions, and Life Insurance Product Development. *See id.* The parties collectively produced 11 expert reports on topics that included the Actuarial Standards of Practice, redetermination custom and practices, reinsurance, insurance state regulations, and the economic analysis of all debits and credits to the account value for every 46,000+ Settlement Class Member, and Plaintiff took and defended 8 expert depositions. *See id.* ¶ 15. Plaintiff also served 69 requests for production, 25 interrogatories, and 30 requests for admission on both Voya and Lincoln. *See id.* ¶ 9. This resulted in the production and review by Class Counsel of nearly 350,000 pages of documents. and data sets. *See id.* That number includes thousands of Excel spreadsheets, each containing a mountain of data and many of which included over a dozen separate worksheets. *See id.* ¶ 9, 11. Class Counsel also prepared and defended the deposition of Plaintiff Hanks. *See id.* ¶ 10.

Class Counsel also conducted extensive third-party discovery. Plaintiff served subpoenas on entities that worked with Voya and Lincoln, including Milliman, EY, and Willis Towers Watson. *See* Ard Decl. ¶ 12. These subpoenas resulted in the production of important documents relating to Voya's and Lincoln's work on and analysis of the 2016 COI increase. *See id.* For

example, one internal Willis Towers Watson email discussed whether profitability should be analyzed using Aetna's original pricing assumptions (which Voya and Lincoln could not locate). *See id.* (describing Dkt. 222-30). Whether the COI Increase was improper because it "resulted in profits at a level exceeding that anticipated when the class policies were originally sold," *see* SJ Order at 23–24, was one of the core issues for trial. Plaintiff also made Freedom of Information requests to state insurance departments throughout the United States. *See id.* ¶ 13. Class Counsel's efforts uncovered important emails between the NYDFS and Voya regarding the propriety of the 2016 COI Increase and Voya's role in it that had not previously been produced during discovery, which Voya sought to keep out in hotly contested motions *in limine* where Plaintiff prevailed. *See id.* ¶ 13, Ex. 4 (5/12/21 FPTC Transcript). Class Counsel repeatedly met and conferred with counsel for Voya and Lincoln about this and other production gaps in the document productions, which resulted in the production of additional highly relevant materials. *See id.* ¶ 14.

Voya and Lincoln's document productions included detailed policy-level data for the more than 46,000 life insurance policies in the putative class. *See* Ard Decl. ¶ 11. The policy-level data included historical payment and credit history for all putative class members. *See id.* Class Counsel expended significant effort to process, analyze, and understand this data. *See id.* As part of these efforts, Class Counsel worked extensively with counsel for Voya and Lincoln over data issues and included detailed topics about policy data in the Federal Rule of Civil Procedure 30(b)(6) notices. *See id.* ¶¶ 10–11, 14. In response to the 30(b)(6) notice, and due to the technical nature of the topics, Voya and Lincoln served detailed written responses that provided important information about the data that was not apparent from the previously produced information. *See id.* ¶ 11.

After the close of fact discovery on December 29, 2017, *see* Dkt. 52, the parties moved into expert discovery on the merits. Discovery necessitated significant work with top-notch

actuarial, financial modeling, regulatory, and damages experts that were identified and retained by Class Counsel. Class Counsel worked with four experts—actuarial expert Christopher Hause, reinsurance expert Neil Pearson, insurance regulatory practices expert Bruce Foudree, and damages expert Robert Mills—to put together four reports totaling 173 pages, supported by more than 50,000 pages of exhibits, attachments, or appendices, which were served on March 1, 2018. *See* Ard Decl. ¶ 15. Voya designated three experts—Timothy Pfeifer for actuarial issues, Neil Rector for regulatory practices, and Dr. David Babbel for damages (with Professor Craig Merrill later substituting in for Dr. Babbel)—and served detailed expert reports for each of them on May 1, 2018, totaling 150 pages with exhibits totaling 72 pages and 15 spreadsheets. *See id.* Class Counsel worked with Plaintiff's experts to analyze these opinions and back-up models to quickly turn around detailed rebuttal reports and served four more reports totaling 101 pages with 21 pages of exhibits on June 1, 2018. *See id.* Over the next two months, Class Counsel deposed all of Voya's experts and prepared and defended the depositions of Plaintiff's four experts. *See id.* After Professor Merrill substituted in for Dr. Babbel in January 2021, Class Counsel took his deposition in February 2021. *See id.* The parties collectively produced 11 expert reports and took and defended 8 expert depositions.

During the course of discovery, Class Counsel learned that NYDFS had investigated the 2016 COI Increase and expressed its view that Voya's COI Increase breached the "class basis" provision in the policy. *See* Ard Decl. ¶ 16. But Class Counsel expended substantial time and resources investigating and developing additional theories of breach, which included hundreds of hours of document review, deposition preparation, and expert work. *See id.*

### III.   Class Counsel Overcame Voya's Hard-Fought Efforts at the Class-Certification and Summary-Judgment Stages

Plaintiff's motion for class certification was filed on August 15, 2018, and the reply was filed on October 4, 2018. *See* Dkts. 85–91; 96–97. Collectively, Class Counsel prepared and filed 35 pages of briefing supported by 50 exhibits totaling hundreds of additional pages. *Id.* Voya and Lincoln opposed Plaintiff's motion, filing a 25-page opposition brief, supported by 24 exhibits, arguing that variations in fact and law, as well as intra-class conflicts, prevented certification. *See* Dkt. 94–95. On March 13, 2019, the Court granted-in-part Plaintiff's motion, certifying a breach-of-contract class for the claim against Voya. Dkt. 110 (Class Cert. Order).[7] The Court appointed Susman Godfrey as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g), determining that it "successfully conducted discovery" and its "knowledge of the law" and "performance in the present case" demonstrated competence to protect the interests of the class. *Id.* at 20–21 (citations omitted). The Court denied the motion for class certification for the unjust enrichment claim against Lincoln. *Id.* at 15–20.[8]

Class Counsel put together a comprehensive proposed notice plan, which the Court approved on April 23, 2019. *See* Dkt. 122 (finding the form and manner of notice proposed by Plaintiff met "the requirements of Rule 23 and due process, constitute[d] the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto"). Class Counsel worked with the Notice Administrator, JND Legal Administration LLC ("JND"), to effectuate notice and the creation of a class website and call-in number. *See* Ard Decl. ¶ 19. Only twelve policies validly and timely opted out of the class. *See id.*

---

[7] Published as *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374 (S.D.N.Y. 2019).
[8] The parties subsequently stipulated to a voluntary dismissal of Lincoln without prejudice. Dkts. 131–32.

The parties next briefed and filed cross-motions for summary judgment. Dkts. 133–45, 148–152. Collectively, Class Counsel prepared and filed 100 pages of briefing supported by 83 exhibits, which included a flash drive with detailed and extensive policy and actuarial data. *See* Ard Decl. ¶ 20. Voya affirmatively sought summary judgment on all of Plaintiff's breach theories and opposed Plaintiff's cross-motion, filing a combined 93 pages of briefing supported by 29 exhibits. *See id.* On September 30, 2020, the Court denied Plaintiff's cross-motion for partial summary judgment and granted-in-part and denied-in-part Voya's motion for summary judgment. Dkt. 174. The Court granted summary judgment to Voya on some of Plaintiff's theories of breach, but upheld Plaintiff's "cost factors" theory:

> Here, an issue of material fact remains as to whether the 2016 COI Adjustment was based on analysis of cost factors related to the in-force polices as mandated by the terms of the Policy or was based on Lincoln Life's profitability goals. Hanks puts forth evidence and expert opinions supporting its position that the 2016 COI Adjustment was based not on an evaluation of future cost factors, but was implemented on the basis of improper considerations with the aim of "increas[ing] anticipated future profitability." Voya disputes this evidence and has come forward with evidence and expert opinions tending to show that contractually proper future cost factors were the basis of the 2016 COI Adjustment. But at bottom these are disputed issues of material fact and the Court will deny Voya's motion for summary judgment.

*Id.* at 24–25 (citations omitted).

## IV.  Class Counsel Vigorously Litigated the Case to the Eve of Trial

Class Counsel made clear to Voya that it was ready and able to successfully litigate this case through trial, which substantially increased the settlement Plaintiff and the Class were able to obtain. Between January 28, 2021 and April 19, 2021, the parties fully briefed thirteen motions *in limine*—nine from Plaintiff and four from Voya. *See* Dkts. 189–212, 230–35, 241–43. Class Counsel prepared and filed 112 pages of briefing supported by 49 exhibits again totaling hundreds of additional pages. *See* Ard Decl. ¶ 23. The parties also submitted proposed jury instructions, *voir dire* questions, and verdict forms. *See* Dkts. 213–15, 217, 224–26. The parties filed their proposed

Final Pretrial Conference Order on April 27, 2021, which included trial witness lists, depositions designations, and trial exhibit lists. *See* Dkt. 244.

In advance of these pretrial filings, Class Counsel held a mock trial on January 15, 2021. *See* Ard Decl. ¶ 22. The mock trial required weeks of preparation, including the creation of extensive multimedia presentations. *See id.* Class Counsel utilized the information it learned during the mock trial to drill down on the core issues and mitigate concerns for trial during its pretrial preparation, including motions *in limine*, deposition designations, and the exhibit list. *See id.*

The Court held the final pretrial conference on May 12, 2021. *See* Dkt. 250–51. Class Counsel won key motions at the pretrial conference, including defeating a motion to exclude critical testimony from Plaintiff's actuarial expert Christopher Hause and a motion to exclude evidence related to NYDFS's investigation of Voya, which included representations that Voya made to NYDFS about the increase and information about Voya's profitability in relation to the increase. *See* Ard Decl., Ex. 4 (5/12/21 FPTC Transcript). Following the final pretrial conference, the Court ordered supplemental briefing on Voya's still-pending motion *in limine* regarding past damages that attacked a vast swath of historical damages at issue, which the parties submitted and remained under consideration by the Court at the time this Settlement was reached. *See* Dkts. 254–57. On August 31, 2021, the Court informed the parties that this matter was set as the backup trial for the week of December 6, 2021. *See* Dkt. 263.

## V.   Class Counsel Negotiates the "Highly Successful" Settlement

Through the life of the case, the parties have exchanged numerous settlement offers and counter-offers and have engaged in several in-person mediations prior to the pre-trial conference, including on June 7, 2017; November 13, 2019; and March 6, 2020; all of which were in person in New York. *See* Ard Decl. ¶ 25. Following the Court's final pre-trial conference, the parties

reopened the settlement dialogue and scheduled an in-person mediation before mediator Robert Meyer from JAMS, which took place on August 11, 2021 in Los Angeles, California. *See id.* ¶ 25–26; Meyer Decl. ¶ 4 (Dkt. 283). Following that in-person mediation, the parties continued to engage in follow-on settlement communications—including offers and counteroffers—for the next few months, which resulted in a memorandum of understanding for a settlement on October 21, 2021. *See* Ard Decl. ¶ 28. A long-form settlement was heavily negotiated, involving the exchange of multiple drafts over a two-month period, and was fully executed on January 5, 2022. *See id.*

The mediator, Mr. Meyer, declares that the proposed Settlement is a "highly successful result" for Class Members, and is fair and reasonable. *See* Dkt. 283 (Meyer Decl.) at ¶¶ 3, 5, 7. Throughout the process, the Settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length. *See* Ard Decl. ¶ 29; Meyer Decl. ¶¶ 3–7. Class Counsel was well informed of material facts and the negotiations were hard-fought and non-collusive. *See* Meyer Decl. ¶¶ 3–7. Class Counsel analyzed all the contested legal and factual issues to thoroughly evaluate Voya's contentions, advocated in the settlement negotiation process for a fair and reasonable settlement that serves the best interests of the Class, and made fair and reasonable settlement demands. *See id.* Mr. Meyer stated that the Settlement is "particularly fair, adequate and reasonable" because "it provides a very substantial recovery for the Class" despite the "obstacles standing in the way of achieving a successful resolution of the claims." *Id.* ¶ 7.

On February 3, 2022, the Court filed the "Order Preliminarily Approving Class Action Settlement." Dkt. 286. The Order stated that Class Counsel "ha[d] provided the Court with information sufficient to enable it to determine whether to give notice of the proposed settlement to the Class pursuant to Rule 23(e)(1)(A)." *Id.* Using this information, the Court determined that it will likely be able to find that the Settlement is fair, reasonable and adequate[.]" *Id.*

For the Class, the Settlement awards four main benefits:

1. **CASH**: A cash Settlement Fund of up to **$92,500,000.**

   - This cash fund is equal to ***76% of all COI overcharges*** collected by Voya and Lincoln from the Class Policies through May 31, 2021. *See* Ard Decl. ¶¶ 30 –31.

   - For any policy that timely and validly opts out during the Federal Rule of Civil Procedure 23(e)(4) period, the Settlement Fund decreases on a *pro-rata* basis measured by the incremental COI charges collected by Voya and Lincoln from June 1, 2016 through May 31, 2021 (the "Final Settlement Fund"). *See* Ard Decl. ¶ 30. As of March 31, 2022, there are three opt-outs. *See id.* ¶ 41. The Final Settlement Fund as of March 31, 2022 after the *pro-rata* reduction for these three policies is $92,498,902.63. *See id.* No portion of the Final Settlement Fund will revert to Voya or Lincoln, and checks will be mailed directly to class members without having to fill out claim forms.

2. **COI RATE FREEZE**: A total and complete freeze on any cost of insurance ("COI") increase for five additional years, subject only to any increase affirmatively required by Voya's regulator. Thus, even if Voya or Lincoln has a future change in cost factors that would otherwise permit a COI rate increase under the terms of the policies—including any cost factors that may have increased due to any alleged surge in mortality due to the COVID-19 pandemic—Voya and Lincoln will not increase COI rates for 5 years. Policyholders now have the ability to predict what their COI obligations will be for a substantial period of time.

3. **VALIDITY STIPULATION & STOLI WAIVER**: As part of the Settlement, Voya and Lincoln have agreed not to challenge the validity and enforceability of any eligible policies owned by participating Class members on the grounds of lack of an insurable interest, stranger originated life insurance ("STOLI"), or misrepresentations in the application for such policies.

An eminently qualified expert with extensive experience in the life insurance industry and with longevity-based products has opined that these non-monetary forms of relief are worth $26,231,954 to the Settlement Class, with the vast majority of that amount resulting from the enormous benefits created by the COI freeze, *see* Declaration of Keith McNally ("McNally Decl.") ¶ 11, Ex. A (Report), especially given what insurance companies claim is a huge spike in mortality that allegedly justifies, in their view, a new COI increase due to mortality costs.

**ARGUMENT**

I.     **Class Counsel's Fee Request is Reasonable**

A.     **Class Counsel is Entitled to Fees from the Common Fund**

The Supreme Court has long recognized that a lawyer who obtains a recovery "for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Court's authority to award attorneys' fees in class cases "stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1803 (3d ed.). The purposes of the doctrine are to provide "just compensation for class counsel"; to "encourage skilled counsel to represent" the class and "discourage future alleged misconduct of a similar nature"; and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp.3d 394, 416 (S.D.N.Y. 2018); *Goldberger v. Integrated Res.*, 209 F.3d 43, 47 (2d Cir. 2000) ("The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost."). "The common-fund doctrine is therefore rooted in the courts' historic power of equity to permit a person who secures a fund for the benefit of others to collect a fee directly from the fund." *Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019) (quotations omitted).

B.     **The Requested Fee is Reasonable under the Percentage Method**

1.     **The Percentage Approach is Favored**

Under the percentage method, the "court sets some percentage of the recovery as a fee." *Goldberger*, 209 F.3d at 47. Courts routinely find that the percentage of the fee method is the preferred means to determine a fee because it "directly aligns the interests of the class and its

16

counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold Min. Co., Ltd*., 509 F. App'x 21, 24 (2d Cir. 2013) ("[T]he prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."); *Pantelyat v. Bank of Am., N.A*., 2019 WL 402854, at *8 (S.D.N.Y. Jan. 31, 2019) (noting the "strong consensus—both in this Circuit and across the country—in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery"); *Phoenix COI*, 2015 WL 10847814, at *14 ("[T]he percentage method continues to be the trend of district courts in this Circuit and has been adopted in the vast majority of circuits.").

The percentage-of-the-fund approach recognizes that the quality of counsel's services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . . The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel."). Class Counsel's work, performed entirely on a contingent basis, enabled the Class to recover ***76% of the alleged overcharges***, a result that exceeds a COI settlement that was deemed "one of the most remunerative settlements this court has ever been asked to approve" (*Phoenix COI*, 68.5%) and another that was called "quite extraordinary" (*Hancock COI I*, 42%).[9] To best incentivize similarly outstanding and efficient results in the future, the Court should apply the percentage approach.

---

[9] *See Phoenix COI*, 2015 WL 10847814, at *10–11, *13; *Hancock COI*, Dkt. 164 at 20:08–10.

### 2. A Fee of 25.7% of the Overall Settlement Benefits is Fair and Reasonable

Here, Class Counsel is seeking a fee of 25.7% of the gross settlement benefits, capped at 33% of the Final Settlement Fund when viewed in isolation, which is $30,524,637.87 as of March 31, 2022. *See* Ard Decl. ¶ 41. As set forth in the accompanying expert report, financial analysts with expertise in longevity markets who work with large institutional investors to acquire life settlements, value the nonmonetary relief made available to Class Members at $26,231,954. *See* McNally Decl. ¶¶ 2–11, Ex. A (Report). The vast majority of that benefit—$25,985,761—derives from the COI Freeze. *See id.* ¶ 11, Ex. A at 16–17. The total cash fund available to Class Members is $92.5 million. The total gross settlement value, combining the nonmonetary and monetary benefits, is over $118.73 million, when the entire benefits made available to the Class are considered.[10]

In calculating the overall settlement value, courts include the value of both the monetary and non-monetary benefits conferred on the Class. *See* Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges 35 (3d ed. 2010) ("Courts use two methods to

---

[10] While the Final Settlement Fund will decrease proportionately to opt-outs, the relevant metric for determining a percentage award is the entire settlement value made available to potential class members ($118,731,954), or using a less accepted and more conservative methodology, the entire cash fund available to potential class members ($92,500,000). The Second Circuit has held that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). District courts in the Second Circuit agree that the entire-fund rule applies even if some portion of the unclaimed fund reverts to defendants, although here *no portion* of the Final Settlement Fund reverts to Voya or Lincoln. *See, e.g., In re Nigeria Charter Flights Litig.*, 2011 WL 7945548, at *5 (E.D.N.Y. Aug. 25, 2011) *report and recommendation adopted*, 2012 WL 1886352 (E.D.N.Y. May 23, 2012); *Aros v. United Rentals, Inc.*, 2012 WL 3060470, at *5 (D. Conn. July 26, 2012); *Bozak v. FedEx Ground Package Sys.*, Inc., 2014 WL 3778211, at *6 (D. Conn. July 31, 2014). Nevertheless, Class Counsel agrees to cap its fee request at 33% of the Final Settlement Fund following the close of the opt-out period and accounting for opt-outs.

calculate fees for cases in which the settlement is susceptible to an objective evaluation. The primary method is based on a percentage of the actual value to the class of any settlement fund *plus the actual value of any nonmonetary relief.*" (emphasis added)).[11] In COI litigation, that includes the value of what was achieved here: the COI Rate Increase Freeze and the Validity Confirmation. *See Phoenix COI*, 2015 WL 10847814 at \*15 ("In calculating the overall settlement value for purposes of the 'percentage of the recovery' approach, Courts include the value of the both the monetary and non-monetary benefits conferred on the Class." (citing cases)). And even if the specific value of the nonmonetary benefits is not explicitly quantified, the availability of these benefits to the class provides additional support for the reasonableness of the fee request. *See id.* at \*17 ("The substantial injunctive relief is a major factor in favor of the fee request, even if no specific monetary value is assigned to it.").[12]

---

[11] *See also* American Law Institute, Principles of the Law of Aggregate Litigation § 3.13 (2010) ("[A] percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement."); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (district court properly determined that settlement was fair based in part on its valuation of the "nonmonetary antitrust" benefits, principally a "price freeze"); *Sheppard v. Consol. Edison Co. of N.Y.*, 2002 WL 2003206, at \*7 (E.D.N.Y. Aug. 1, 2002) (approving fee petition where fee was measured as a percentage of the "total settlement," which included $6.745 million in monetary relief and "an estimated $5 million in non-monetary, injunctive relief"); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) ("The value of the injunctive relief here is a highly relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees.").

[12] *See also, e.g.*, *In re Payment Card*, 991 F. Supp. 2d at 446 ("[A]lthough it is impossible to know with certainty the ultimate value of the injunctive relief, it may very likely exceed the value of the monetary relief in the long run. The injunctive relief is therefore a 'relevant circumstance,' to say the least." (citation omitted)); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524-25 (E.D.N.Y. 2003), *aff'd* 396 F.3d 96 (2d Cir. 2005) (awarding $220 million fee and explaining: "the Settlements are so large, particularly considering the injunctive relief, that even the exorbitant fee I award seems small in comparison . . . . I agree that the substantial injunctive relief here should inform my decision on awarding fees, and it has"); *see also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (where fee award was analogized to a common fund percentage award, fee was justified in part by "injunctive and other non-monetary relief").

Courts in the Second Circuit and beyond regularly approve fee awards using percentages that are substantially higher than the percentage requested here, which is 25.7% of the total value of monetary and nonmonetary benefits available to the Settlement Class (or 33% of the cash value of the Final Settlement Fund viewed in isolation)—including in settlements larger on a gross basis than this one and with recoveries of the damages at issue that were nowhere close to as remunerative as the 76% of overcharges secured here, or that lack nonmonetary benefits. *See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Cunningham v. Cornell Univ.*, Case No. 16-cv-06525-PKC-JLC, Dkt. 445 at 14–15 (S.D.N.Y. Jan. 15, 2021) (Castel, J.) (approving fee of 33.3% of the Settlement fund); *Hancock COI*, Dkt. 146 ¶ 15, Dkt. 160 (approving a fee representing 30% of the total settlement value where the settlement represented 42% of the alleged COI overcharges); *In re Mun. Derivatives Antitrust Litig*., 2016 WL 11543257, at *1 (S.D.N.Y. July 8, 2016) (awarding 32.83% of ~$101 million cash settlement); *Phoenix COI*, 2015 WL 10847814, at *13 (considering monetary and nonmonetary benefits and awarding fees that were "33–1/3% of the cash portion of the settlement"); *In re Initial Pub. Offering Sec. Litig*., 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.3% of a $510 million cash settlement fund); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (awarding one-third of cash fund because that "is consistent with the norms of class litigation in this circuit"); *In re U.S. Foodservice, Inc. Pricing Litig*., 2014 WL 12862264, at *3 (D. Conn. Dec. 9, 2014) (awarding 33.3% of $297 million cash

settlement fund); *In re Domestic Drywall Antitrust Litig.*, 2018 WL 3439454, at *20 (E.D. Pa. July 17, 2018) (awarding 33.3% of $190 million settlement).[13]

The requested fee is also reasonable because it is less than what Class Counsel could obtain on the open market. Indeed, "market rates, where available, are the ideal proxy for . . . compensation." *Goldberger*, 209 F.3d at 52; *see also McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 422 (2d Circ. 2010) (explaining that focus should be "on mimicking a market"); *In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) ("[T]he percentage approach most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model[.]"). Class Counsel regularly takes high-stakes non-class commercial cases on a contingent fee basis, and it typically negotiates contingent fee arrangements with individual non-class plaintiff clients for engagements where the firm advances expenses, to be equal to 40% of the gross sum recovered, with percentage increases based on the time of settlement and trial. *See* Ard Decl. ¶ 42–43. "This fact is highly relevant to determining the appropriateness of the award because the Court's ultimate task is to 'approximate the reasonable fee that a competitive market would bear.'" *Phoenix COI*, 2015 WL 10847814, at *17 (quoting *Johnson v. City of N.Y.*, 2010 WL 5818290, at *4 (E.D.N.Y. Dec. 13, 2010)); *see also Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (approving one-

---

[13] *See also Leonard, et al. v. John Hancock Life Ins. Co. of N.Y., et al.*, Case No. 18-CV-4994, Dkt. 213 (S.D.N.Y. March 17, 2022) (awarding 28% of the $123 million cash component made available to the Settlement Class, viewed in isolation of all other benefits); *In re Pfizer Inc. Sec. Litig.*, No. 04-cv-09866 (LTS), Dkt. No. 727 at 2 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement); *In re Solodyn Antitrust Litig.*, No. 14-md-250, Dkt. 1180 (D. Mass. July 18, 2018) (awarding 33.3% of $72.5 million settlement); *In re CRT Antitrust Litig.*, 2016 WL 183285, at *3 (N.D. Cal. Jan. 14, 2016) (awarding 30% of $127.5 million settlement); *In re Apollo Group Inc. Sec. Litig.*, 2012 WL 1378677, at *9 (D. Ariz., Apr. 20, 2012) (awarding 33.33% of $145 million settlement fund).

third fee request partly because clients "typically pay one-third of their recoveries under private retainer agreements").

### C.    The Requested Fee Is Reasonable Under the Lodestar "Crosscheck"

The Second Circuit also permits courts to "cross-check" the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paraprofessional by their current hourly rate, and totaling the amounts for all timekeepers. Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "[C]ounsel may be entitled to a multiplier of their lodestar rate to compensate them for the risk they assumed, the quality of their work and the result achieved for the class." *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008).

In this entirely contingent action, Class Counsel spent 11,901.10 hours, representing a lodestar of $8,468,385, and advanced $2,183,929.18 in expenses. *See* Ard Decl. ¶¶ 36–37, 45.[14] Class Counsel's hourly rates are reasonable. The rates for Class Counsel and its staff who billed significant amounts of time to this case (ranging from $225 to $1,300 per hour) are comparable to peer law firms litigating matters of similar magnitude. In a survey of AmLaw 50 law firms performed by PwC Product Sales, LLC and issued in October 2021, the median standard billing

---

[14] Lodestar is calculated at current hourly rates. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989) (endorsing "an appropriate adjustment for delay in payment" by applying "current" rate); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (rates "should be 'current rather than historic'" (citation and internal quotations omitted)); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment"); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (citation omitted) (using current rates helps "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest" (quotation omitted)).

rate for equity partners was $1,253 and for associates was $819. *See id.* ¶¶ 39–40. Here, four of the six Susman Godfrey partners (all of whom are based in New York or Los Angeles) working on this matter have billing rates under $1,000 per hour, with only one partner, Susman Godfrey Managing Partner Kalpana Srinivasan, exceeding the median (by $47). *See id.* ¶¶ 38–39.[15] All associates working on the matter billed below even the 3rd quartile standard billing rate of $709. *See id.* ¶ 40. Courts routinely find Susman Godfrey's rates reasonable. *See, e.g.*, *Hancock COI*, Dkt. 164 at 19:6–13 (accepting Susman Godfrey's rates as reasonable, including rates of Seth Ard and Steven Sklaver); *Phoenix COI*, 2015 WL 10847814, at *18 (finding Susman Godfrey's rates "reasonable" and "comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude"); *In re Auto. Parts Antitrust Litig.*, 2017 WL 3525415, at *4 (E.D. Mich. July 10, 2017) (finding Susman Godfrey's rates "justified" and "well in line with market").

Taking into account the three opt outs as of March 31, 2022, 33% of the Final Settlement Fund's monetary value is $30,524,637.87, which is equal to a lodestar multiplier of 3.6. *See* Ard Decl. ¶¶ 41, 44. This cross-check confirms the reasonableness of the award requested given the uniquely excellent results obtained in this case, and is well within the range of crosscheck multipliers approved by courts in this Circuit. *See, e.g.*, *Pantelyat*, 2019 WL 402854, at *10 (stating that "[c]ourts regularly award lodestar multiples of up to eight times lodestar" and finding that a multiplier of 4.89 "falls within the realm of reasonableness"); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."). Recent COI class settlements in the Southern District bear out that reality. *See Hancock COI*, Dkt. 164 at 19:14–20:11 (approving lodestar multiplier of 6.92 in light what Judge Gardephe

---

[15] Susman Godfrey does not have non-equity partners. *See id.* ¶ 38. Ms. Srinivasan's billing rate is below the 1st Quartile rate of $1,397. *See id.* ¶ 39.

described as a "quite extraordinary" result); *Phoenix COI*, 2015 WL 10847814, at *18 (approving lodestar multiplier of 4.87).

Cases outside the COI context that use a lodestar crosscheck confirm that the fee award requested here is reasonable. *See, e.g.*, *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (awarding $253 million in fees, in a case that settled before class certification, with a lodestar "multiple of just over 6"); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (awarding 21% fee representing a 3.9 multiplier); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347, 353 (S.D.N.Y. 2014) (awarding 25% of $45.9 million settlement, equating to multiplier of 5.2); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (awarding 33.3% of fund, and noting lodestar multiplier of 6.3 "falls within the range granted by courts"); *In re Deutsche Tele-kom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 25% of $120 million settlement; a 3.96 multiplier); *Davis*, 827 F. Supp. 2d at 185 (multiplier of 5.3 was "not atypical" in similar cases); *Cornwell v. Credit Suisse Grp.*, No. 1:08-cv-03758 (VM), slip op. at 4 (S.D.N.Y. July 20, 2011) (4.7 multiplier).

The fee award requested here, cross-checked for reasonableness by a lodestar multiplier of 3.6, is easily within (and below) the range of multipliers awarded by courts within this District. More importantly, extraordinary results should be rewarded and the fee award requested here is amply justified in light of the extraordinary settlement Class Counsel achieved for the Class.

### D.   The *Goldberger* Factors Support Class Counsel's Fee Request

The "'*Goldberger* factors' ultimately determine the reasonableness of a common fund fee." *Wal-Mart*, 396 F.3d at 121; *see also Philip Servs.*, 2007 WL 959299, at *1. The *Goldberger* factors, which the Court weighs in its discretion, are:

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

209 F.3d at 50. Each of these factors confirms that the requested fee is reasonable.

### 1.    Labor Expended By Counsel (*Goldberger* Factor 1)

The first *Goldberger* factor, which addresses the "the time and labor expended by counsel," strongly supports approval of the requested fee. Class Counsel spent almost 12,000 hours prosecuting this case over more than five years. Class Counsel devoted substantial resources to litigating this case, which enabled Class Counsel to achieve this remarkable result. Among other things, Class Counsel:

- Analyzed over 350,000 pages of documents and data sets, including detailed policy-level historical data for the more than 46,000 class policies, and repeatedly pressed Voya and Lincoln on data and production issues.

- Served 69 requests for production, 25 interrogatories, and 30 requests for admission on both Voya and Lincoln.

- Issued subpoenas to third parties, including Milliman, EY, and Willis Towers Watson, and served Freedom of Information Act requests on state regulators across the nation.

- Took 4 corporate representative and 14 individual depositions for Voya and Lincoln, covering highly technical data and actuarial concepts, and prepared and defended the deposition of Plaintiff Helen Hanks.

- Prepared and served a 30(b)(6) deposition notice with 37 topics on multiple subparts, including topics on technical data issues, and repeatedly met and conferred with Voya and Lincoln over a period of three months on the topics.

- Worked with multiple subject-matter experts to produce 8 expert reports (4 opening, 4 rebuttal) totaling 274 pages.

- Took the depositions of Voya's and Lincoln's experts, including the deposition of Professor Merrill after he replaced Dr. Babbel in January 2021, and prepared and defended the depositions of Plaintiff's experts.

- Prepared 35 pages of briefing and 50 exhibits in support of class certification. The Court granted in part the motion and certified a breach-of-contract class against Voya.

- Assisted the Notice Administrator in providing notice of the class action to the owners of more than 46,000 policies.

- Prepared 100 pages of briefing and 83 exhibits in support of Plaintiff's cross-motion for summary judgment and in opposition to Voya's cross-motion for summary judgment. The Court's order denying in part Voya's motion paved the way for this case to go to trial.

- Held a full-day mock trial on January 15, 2021, which was the result of dozens of hours of preparation and extensive work on multimedia presentations for the mock juries, which occurred virtually during the COVID-19 pandemic, and, therefore, required numerous hours of additional coordination and preparation.

- Fully briefed thirteen *motions in limine* (9 from Plaintiff, 4 from Voya), which required the preparation of 112 pages of briefing supported by 49 exhibits.

- Prepared proposed jury instructions, *voir dire* questions, verdict forms, and a Final Pretrial Conference Statement that included deposition designations, witness lists, and exhibits lists.

- Attended the Final Pretrial Conference on May 12, 2021. At the Final Pretrial Conference, Class Counsel won key motions, including defeating Voya's effort to exclude most of the core opinions of Plaintiff's actuarial expert.

- Participated in four in-person mediations with Voya and Lincoln on June 7, 2017; November 13, 2019; March 6, 2020; and August 11, 2021. Class Counsel also repeatedly met and conferred with Voya and Lincoln throughout the life of the case, exchanging numerous offers and counter-offers, which ultimately resulted in a Memorandum of Understanding on October 21, 2021 with the assistance of mediator Robert A. Meyer. The parties continued to meet and confer over the next few months on the terms of a long-form Settlement Agreement.

*See* Ard Decl. ¶¶ 9–29. The time and labor will also increase as Class Counsel prepares for final-approval proceedings and administers the Settlement Agreement.

### 2.    Magnitude and Complexity of the Litigation (*Goldberger* Factor 2)

The second *Goldberger* factor, which addresses "the magnitude and complexities of the litigation," also strongly supports approval of the requested fee. To call this litigation complex would be an understatement. In *Phoenix COI*, Judge McMahon found another similar COI case "indisputably complex," explaining:

> The complaint alleged the breach of an insurance contract, the resolution of which would require conflicting testimony by experts as to actuarial standards, the original and revised pricing assumptions used by Phoenix for the PAUL insurance products at issue, and what it means to "recoup past losses" or "discriminate unfairly" within

a "class" of insured. These complex claims were bitterly fought, as Defendants developed defenses to liability, damages, and class certification, and offered their own expert opinions on actuarial issues for the key questions. The court has issued opinions of great length of complexity in connection with motions to dismiss and for summary judgment.

2015 WL 10847814, at *6 (granting final approval of a COI class action settlement).

The exact same things can be said of this case. As the Court recognized in the summary judgment order, whether the COI Increase was "based on analysis of cost factors related to the in-force polices" or "improper considerations with the aim of 'increas[ing] anticipated future profitability'" would require the jury to evaluate dueling opinions by experts in actuarial science, practices, and technical actuarial assumptions, documents, and data. *See* SJ Order at 24. Indeed, the expert discovery alone testifies to the complexity and hard-fought nature of the case: the parties collectively produced 11 expert reports and took 8 expert depositions. *See* Ard Decl. ¶ 15. And as explained in more detail below, Voya has aggressively challenged liability, damages, and certification throughout this case. As a result, the Court has issued detailed, complex opinions in response to the parties' motions for class certification and summary judgment. *See* Dkts. 110, 174 (Class Certification and Summary Judgment Orders).

The complexity of this case is also exemplified by Plaintiff's damages models. Plaintiff's damages expert had to process and analyze detailed historical policyholder data for over 46,000 life insurance policies. *See* Ard Decl. ¶ 11. To even process the data required dozens of hours of analysis and the issuance of highly technical data topics to Voya and Lincoln as part of Plaintiff's Federal Rule of Civil Procedure 30(b)(6) notice. *See id.* These questions were so complex that Voya and Lincoln chose to answer some of them in written form. *See id.*

### 3.   The Risk of the Litigation (*Goldberger* Factor 3)

The Second Circuit has identified "the risk of success as 'perhaps the foremost' factor to

be considered in determining [a reasonable fee award]." *Goldberger*, 209 F.3d at 54 (citation omitted); *see also In re Telik,*, 576 F. Supp. 2d at 592 ("Courts have repeatedly recognized that 'the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award to plaintiffs' counsel in class actions."). Risk can vary based on many factors, including the novelty of the legal claims, the complexity of the subject matter, and the existence or stage of a relevant (or even parallel) government action. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010). The "litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55.

The risks Plaintiff and Class Counsel faced here were high, especially where Plaintiffs would have faced a "battle of the experts"—a battle in which no party is ever assured to prevail. *See State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited[.]"), *aff'd*, 798 F.2d 35 (2d Cir. 1986). The Court itself recognized that Voya could prevail on the "cost factors" theory of liability: "costs fundamentally have an effect on profits, which, generally speaking, are a measure of revenues minus costs" and "[c]onsideration of spiraling costs is appropriate and these rising costs may also be reflected in a deteriorating profit margin." *See* SJ Order at 24. Victory on liability issues was in no way guaranteed.

Class Counsel and the Class also faced substantial risks on the damages side. Voya's still-pending motion *in limine* sought to preclude a substantial portion of the class from being able to recover damages. *See* Dkt. 202 (Def. Damages MIL) at 1–11; Dkt. 233 (Pltf. Damages MIL Opp.)

at 1. Voya also intended to argue that, even if there were a breach, it only affected a small portion of the increase. *See* Ard Decl., Ex. 4 (5/12/21 FPTC Transcript) at 26:23–27:9 (Voya's counsel arguing that the jury would potentially find that 95% of the increase was proper even if a breach occurred). In other words, even if the Class prevailed on liability at trial, Voya's defenses, if credited, imposed difficult hurdles on damages. And even if Class Counsel and the Class overcame these risks and prevailed on every issue at trial, the risk would have continued after that with the inevitable filing of decertification motions, post-verdict motions, and appeals. *See Phoenix COI*, 2015 WL 10847814, at *6 ("Even if the Class could recover a judgment at trial and survive any decertification challenges, post-verdict and appellate litigation would likely have lasted for years.").

Class Counsel undertook enormous risk in taking on this case—over $2 million in advanced expenses and almost 12,000 hours in attorney time—all of which could have resulted in a write-off and no compensation had the case been lost. Courts in the Southern District and the Second Circuit have recognized that this type of contingent risk is an important factor in evaluating the reasonableness of a fee. *See Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, at *11 (S.D.N.Y. July 31, 2014) ("Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees."); *City of Providence vs Aeropostale*, *Inc.*, 2014 WL 1883494, at *14 ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award[.]").

The risk was also high because Class Counsel sought large damages against a deep-pocketed insurance company with essentially limitless resources, which hired two of the country's best-known law firms to defend it. *See In re Abbott Labs. Sec. Litig.*, 1995 WL 792083, at *10

29

(N.D. Ill. July 3, 1995) (explaining that given "the formidable and nearly limitless resources of the opposition's nationally prominent law firms, and the amount of economic and personnel investment required to sustain the momentum of massive litigation, it is difficult to conceive of a more undesirable piece of litigation for any attorneys considering undertaking contingent fee litigation"). And the risk to Class Counsel was compounded because it spent more than five years litigating this case. The delay in payment weighs strongly in favor of the requested fee. *See In re Domestic Drywall Antitrust Litig.*, 2018 WL 3439454, at \*20 ("A significant factor in awarding the full one-third [33-1/3%] requested is the delay in payment."). The only certainty from the outset of this litigation was that there would be no fee or expense award if the case were lost.

### 4.    The Quality of the Representation (*Goldberger* Factor 4)

"[T]he quality of representation is best measured by results[.]" *Goldberger*, 209 F.3d at 55. And the "result obtained for the Class" is sometimes referred to as "[t]he critical element in determining the appropriate fee to be awarded class counsel out of a common fund." *Maley*, 186 F. Supp. 2d at 373 (internal quotation marks omitted); *see also Loc. 1180, Commc'ns Workers of Am., AFL-CIO v. City of N.Y.*, 392 F. Supp. 3d 361, 378 (S.D.N.Y. 2019) ("[T]he most critical factor is the degree of success obtained by the plaintiff" (internal citation marks and alterations omitted)).

The results here speak for themselves—Class Counsel certified a class, defeated summary judgment, and was able to negotiate a Settlement with a cash component covering ***76% of the overcharges*** through May 31, 2021, as well as nonmonetary benefits with substantial additional value of $26.23 million. *See In re Bisys Sec. Litig.*, 2007 WL 2049726, at \*3 (S.D.N.Y. July 16, 2007) (one way to measure the result is to compare the "extent of possible recovery with the amount of actual verdict or settlement" (citation omitted)). Indeed, it is better than the settlement in *Phoenix COI*—68.5% of COI overcharges plus non-monetary benefits—which Judge

McMahon described as "one of the most remunerative settlements this court has ever been asked to approve," and entered a fee award of 33.33% of the cash portion of the Settlement, found to be reasonable cross-checked against a lodestar multiplier of 4.87. 2015 WL at 10847814, at *11, *18. And it beats, by an even wider margin, the settlement in *Hancock COI*, which Judge Gardephe described as "extraordinary" and for which he approved an award of 30% of the benefits conferred cross-checked for reasonableness against a 6.92 lodestar multiplier.

"The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work." *Seijas v. Republic of Argentina*, 2017 WL 1511352, at *13 (S.D.N.Y. Apr. 27, 2017). As noted above, Voya is represented by two firms with first-rate attorneys who litigated this case vigorously, with well-deserved reputations for their advocacy in the defense of complex class actions. In sum, all of the customary metrics indicative of high quality of representation weigh in favor of the requested fee.

### 5.    Requested Fee In Relation to the Settlement (*Goldberger* Factor 5)

The fifth *Goldberger* factor, which addresses "the requested fee in relation to the settlement," also strongly supports approval of the requested fee. "[T]he fact that the requested fee is comparable to fees that courts have found reasonable . . . weighs in favor of the fee's reasonableness." *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 244 (E.D.N.Y. 2010). As discussed above, the proposed award is well above the range of fees found to be reasonable and awarded by courts in this Circuit.

### 6.    Public Policy Considerations (*Goldberger* Factor 6)

Finally, the sixth *Goldberger* factor, which addresses "public policy considerations," supports approval of the requested fee. Public policy considerations strongly favor incentivizing skilled private attorneys to undertake this type of litigation, especially since the action is on behalf of claimants who lack the financial incentive to obtain a recovery on their own behalf. *See In re*

31

*WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("[T]o attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("'To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.'" (citation omitted)). Accordingly, public policy favors granting the fee application here.

### E.    The Reaction of the Class Supports the Requested Fee

Finally, the preliminary reaction of class members to the Settlement and Class Counsel's fee request, which was disclosed in the Settlement Notice mailed on March 4, 2022, Dkt. 289, confirms the reasonableness of the request. *See In re High-Crush Ptrs. L.P. Secs. Litig.*, 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014) ("In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the class to the fee request in deciding how large a fee to award."). The Settlement Notice informed potential Settlement Class Members that Class Counsel may seek a fee of up to 33% of the Final Settlement Fund. While potential Settlement Class members still have until April 19, 2022 to opt-out or file objections, only three opt-out requests have been submitted. *See* Ard Decl. ¶ 41. Class Counsel will update the Court on the reaction of the class on June 22, 2022, the deadline to file reply papers. *See* Dkt. 286 (Order granting preliminary approval).

## II.   Class Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Settlement and Should Be Reimbursed

Class Counsel also requests reimbursement in the amount of $2,183,929.18 for out-of-pocket expenses reasonably and necessarily incurred in connection with the prosecution of this action. *See* Ard Decl. ¶ 45. "[C]ourts in the Second Circuit normally grant expense requests in

common fund cases as a matter of course." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3863445, at *1 (S.D.N.Y. Aug. 14, 2018) (citation omitted); *see, e.g., Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) ("When the lion's share of expenses reflects the typical costs of complex litigation such as experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses, courts should not depart from the common practice in this Circuit of granting expense requests." (quotation marks omitted)).

The expenses advanced in this litigation are described in the papers filed in support of this application. *See* Ard Decl. ¶ 45. These expenses were reasonable and necessary in this litigation, and have been spent for the direct benefit of the Class. *See id*. They are the type of expenses typically billed by attorneys to paying clients in the marketplace and include such costs as expert fees, mediation costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with the litigation. *See Phoenix COI*, 2015 WL 10847814, at *23 (reimbursing costs such as "fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with this litigation"). The fact that Class Counsel was willing to spend its own money (using *no* outside litigation funding or support), where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary.

Class Counsel also requests that the Court approve the payment of Settlement Administration Expenses pursuant to paragraphs 16 and 32 of the Settlement Agreement. *See* Ard Decl., Ex. 1. The Settlement Administrator has incurred $49,661.66 in such expenses through

March 18, 2022, and will incur additional expenses as Settlement payments are distributed. *See* Declaration of Kimberly K. Ness ("Ness Decl.") ¶¶ 3–4.[16]

### III.   An Incentive Award for Plaintiff Helen Hanks is Appropriate

Class Counsel seeks an incentive award of $25,000 for Plaintiff Helen Hanks. Courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks*, 2005 WL 2757792, at *10.[17]

The Court has already determined that Plaintiff "has dedicated a significant amount of time to working with her attorneys on this litigation." *See* Dkt. 110 (Class Cert. Order) at 8–9. Plaintiff worked with Class Counsel to gather documents and respond to discovery requests, spent hours preparing for her deposition, and has stayed actively involved throughout this case, communicating regularly with Class Counsel. *See* Ard Decl. ¶ 48. Plaintiff has more than adequately performed her role as the named plaintiff.

The requested award is in line with those awarded in other complex class actions. *See, e.g., Hancock COI*, Dkt. 164 at 21:2–4 (approving $40,000 incentive award for each member of the class representative limited liability company that testified); *Phoenix COI*, 2015 WL 10847814, at

---

[16] The Preliminary Approval Order also provides that Settlement Administration Expenses may be paid from the Settlement Fund as they become due. Dkt. 286 ¶ 7. Class Counsel seeks the Court's approval to continue making those payments as they become due. Amounts through March 18, 2022 are set forth in the Ness Declaration.

[17] *See also Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Courts consistently approve awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they endure during litigation."); *Varljen v. H.J. Meyers & Co.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000) (reimbursement of such expenses should be allowed because it "encourages participation of plaintiffs in the active supervision of their counsel").

*24 (awarding $25,000 incentive award for named plaintiff that was deposed); *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) (approving $50,000 incentive award for each of two class representatives); *Bd. of Tr. of AFTRA Ret. Fund*, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) ($50,000 incentive awards to three class representatives); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *7 (S.D.N.Y. Aug. 6, 2010) ($75,000 awards to five named plaintiffs and $25,000 to $60,000 awards to four class member witnesses); *Kifafi v. Hilton Hotels Ret. Plan.*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) ($50,000 incentive award to lead plaintiff). Here, the requested $25,000 requested incentive award represents only a "miniscule portion" of the total settlement value. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding six $50,000 service awards and two $100,000 awards for named plaintiffs).

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that this Court award its requested fees in the amount of $30,524,637.87 plus a *pro rata* share of the interest earned on the Settlement Fund, reimbursement of costs and expenses in the amount of $2,183,929.18, and a $25,000 service award for Plaintiff Helen Hanks.

Dated: April 4, 2022

 /s/ Seth Ard
Seth Ard
Ryan C. Kirkpatrick (*pro hac vice*)
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 212-336-8330
Fax: 212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

Steven G. Sklaver (*pro hac vice*)
Kalpana Srinivasan (*pro hace vice*)

Michael Gervais
Nicholas N. Spear (*pro hac vice*)
Susman Godfrey L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: 310-789-3100
Fax: 310-789-3150
ssklaver@susmangodfrey.com
ksrinivasan@susmangodfrey.com
mgervais@susmangodfrey.com
nspear@susmangodfrey.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served

on the following counsel, this April 4, 2022.

Alan B. Vickery
Boies Schiller Flexner LLP
333 Main Street
Armonk, New York 10504
Tel: (914) 749-8200
Fax: (914) 749-8300
avickery@bsfllp.com
efruchter@bsfllp.com

John F. LaSalle
Andrew Villacastin
Boies Schiller Flexner LLP
55 Hudson Yards
20th Floor
New York, NY 10001
Tel: (212) 446-2300
Fax: (212) 446-2350
jlasalle@bsfllp.com
avillacastin@bsfllp.com

Motty Shulman
Robin A. Henry
Glenn L. Radecki
Bryan McIntyre
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000 (telephone)
(212) 859-4000 (facsimile)
motty.shulman@friedfrank.com
robin.henry@friedfrank.com
glenn.radecki@friedfrank.com

*Attorneys for Voya Retirement Insurance and Annuity Company, formerly known as Aetna Life Insurance and Annuity Company*

      */s/ Nicholas N. Spear*   
       Nicholas N. Spear