# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HELEN HANKS, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY, formerly known as Aetna Life Insurance and Annuity Company,<br>          Defendant. | Civil Action No. 16-cv-6399<br><br>**DECLARATION OF SETH ARD IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARD** |

I, Seth Ard, declare as follows:

1. I submit this declaration in support of Class Counsel Susman Godfrey L.L.P.'s "Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Award," in connection with the proposed class action settlement between Plaintiff Helen Hanks, on behalf of herself and the certified class, Defendant Voya Retirement Insurance and Annuity Company ("Voya"), and its administrator and reinsurer the Lincoln Life & Annuity Company of New York ("Lincoln").

2. I am a member in good standing of the bar of this Court, an active member of the State Bar of New York, a partner in the law firm of Susman Godfrey, and counsel of record for Plaintiff Hanks and court-appointed Class Counsel in the above-captioned action. I have personal knowledge of the facts set forth herein or they are readily discernible, and, if called to testify as a witness, could and would testify competently thereto.

1

3. Attached as **Exhibit 1** is a true and correct copy of the "Joint Stipulation and Settlement Agreement" in this matter, which was fully executed on January 5, 2022.

4. Class Counsel Susman Godfrey has significant experience with insurance litigation and class actions, including cost of insurance ("COI") class actions and settlements thereof. Susman Godfrey has represented numerous classes of policyowners seeking recovery of COI overcharges against insurers, including AXA Equitable Life Insurance Company, North American Company for Life and Health Insurance, Genworth Life and Annuity Insurance Company, and Security Life of Denver Insurance Company. Class Counsel has substantial experience prosecuting large-scale class actions and life settlement litigation. A copy of the firm's class action profile and the profiles of myself and my fellow Class Counsel are attached hereto as **Exhibit 2**.

5. Plaintiff Helen Hanks has a life insurance policy issued by issued by Aetna Life Insurance and Annuity Company ("Aetna"), now Voya, in 1984. Attached as **Exhibit 3** hereto is a true and correct copy of Plaintiff's life insurance policy (Dkt. 5-1).

6. In June 2016, Voya, at the recommendation of its reinsurer Lincoln, raised COI rates for over 46,000 universal life insurance policies ("Class Policies"), comprising 18 product lines issued by Aetna between 1983 and 2000 (the "2016 COI Increase").

7. Class Counsel immediately investigated whether the 2016 COI Increase was made in compliance with the terms of the Class Policies. Class Counsel worked with industry experts to do a comprehensive review of publicly available information about the Class Policies and the 2016 COI Increase, including studying the language of the Aetna policy forms, analyzing trends in actuarial assumptions—detailed in Voya's and Lincoln's public filings with insurance regulators—from the time the policies were issued, and reviewing the information Voya and

Lincoln provided to policyowners about the 2016 COI Increase. At the time of this investigation, Class Counsel was unaware that the New York Department of Financial Services ("NYDFS") was also investigating the 2016 COI Increase.

8. Plaintiff filed this case on August 11, 2016. Dkt. 1. The complaint included a claim for breach of contract against Voya and a claim for unjust enrichment against Lincoln in relation to the 2016 COI Increase. *Id.* Voya and Lincoln filed answers on November 1, 2016. *See* Dkts. 27–28. On December 6, 2016, Plaintiff filed a "Motion to Appoint Interim Class Counsel Pursuant to Fed. R. Civ. P. 23(g)," which the Court granted on February 8, 2017. *See* Dkts. 32, 41.

9. Fact discovery lasted until December 29, 2017, with supplemental discovery obligations under Federal Rule of Civil Procedure 26(e) continuing thereafter. Dkt. 52. During this time, Plaintiff served 69 requests for production, 25 interrogatories, and 30 requests for admission on both Voya and Lincoln. Voya and Lincoln produced—and Plaintiff reviewed—nearly 350,000 pages of documents and spreadsheets, including actuarial tables, policy-level data, and thousands of data sets and complicated spreadsheets, many with dozens of separate individual worksheets. Plaintiff, in turn, responded to Voya's and Lincoln's 19 requests for production, 6 interrogatories, and 58 requests for admission.

10. Plaintiff took 4 corporate representative depositions and 14 depositions of individual witnesses from Voya and Lincoln. These depositions included Michael Smith, Voya's Chief Financial Officer; Patrick Lusk, Voya's Chief Actuary; Anthony Brantzeg, the Chief Risk Officer for Voya's individual life, annuities, and employee benefits lines of business; Michael Burns, Lincoln Senior Vice Presidents of Life Solutions; Paul Spurr, Lincoln Senior Vice President of Financial Management and Strategy for Life Solutions; and Michael Parker, former

Lincoln Senior Vice President for Life Insurance Product Development. Plaintiff's Federal Rule of Civil Procedure 30(b)(6) deposition notice included 37 topics. The parties met and conferred for three months on the Rule 30(b)(6) topics. Voya and Lincoln also deposed Plaintiff Hanks.

11. The productions included detailed policy-level data, providing information on historical payment, deductions, and credit history for the more than 46,000 life insurance policies in the then-putative class. Class Counsel, working with Plaintiff's damages expert Robert Mills, spent significant time processing and analyzing this data. With the assistance of Mr. Mills, Class Counsel drafted detailed topics about policy data for Plaintiff's Federal Rule of Civil Procedure 30(b)(6) notices. Voya and Lincoln served detailed written answers in response to these topics. These written responses included important information that was not apparent from the previously produced data.

12. Plaintiff served subpoenas on third-party entities that worked with Voya and Lincoln, including Milliman, Inc., Ernst & Young LLP, and Willis Towers Watson. These subpoenas resulted in the production of relevant documents related to 2016 COI Increase. For example, an internal Willis Towers Watson email from January 2016, filed in redacted form as Dkt. 222-30, states: "Under the documentation for each block, I think we would also need the profitability using the original assumptions at the time of pricing or last redetermination." This document contained important information relating to Plaintiff's argument that the 2016 COI Increase was improper because it "resulted in profits at a level exceeding that anticipated when the class policies were originally sold." *See* Dkt. 174 (SJ Order) at 24.

13. Plaintiff has also made Freedom of Information requests to state insurance departments throughout the United States relating to Voya's 2016 COI Increase. Plaintiff's efforts

4

uncovered important emails between the NYDFS and Voya regarding NYDFS's investigation into the 2016 COI Increase that had not previously been produced during discovery.

14.  Class Counsel repeatedly met and conferred with counsel for Voya and Lincoln on issues related to the completeness of document productions, discovery responses, depositions, and data. Among other things, these efforts resulted in the production of additional relevant materials such as voicemails from key witnesses.

15.  Expert discovery lasted until August 1, 2018, with additional expert discovery continuing thereafter. Dkt. 84. On March 1, 2018, Plaintiff produced reports from four experts: actuarial expert Christopher Hause, reinsurance expert Neil Pearson, regulatory custom and practice expert Bruce Foudree, and damages expert Robert Mills. These reports totaled 173 pages supported by 50,918 pages of exhibits, attachments, and appendices. On May 1, 2018, Voya and Lincoln produced reports from three experts: actuarial expert Timothy Pfeifer, regulatory custom and practice expert Neil Rector, and damages expert Dr. David Babbel totaling 150 pages with exhibits totaling 72 pages and 15 spreadsheets. On June 1, 2018, Plaintiff produced rebuttal expert reports from all four experts. These reports totaled 101 pages with 21 pages of exhibits. All seven experts were subsequently deposed. In January 2021, Voya informed Plaintiff that Professor Craig Merrill was being substituted for Dr. Babbel as Voya's damages expert. Plaintiff deposed Professor Merrill on February 12, 2021.

16.  During fact discovery, Class Counsel learned that NYDFS had investigated the 2016 COI Increase and had stated that the increase breached the "class basis" provision of the Class Policies. Class Counsel nonetheless expended substantial time and resources working with actuarial and industry experts investigating and developing additional theories of breach, which included hundreds of hours of document review, deposition preparation, and expert work.

17.  Plaintiff's opening motion for class certification was filed on August 15, 2018; Voya's and Lincoln's opposition was filed on September 20, 2018; and Plaintiff's reply was filed on October 4, 2018. Dkts. 85–91, 94–97. Collectively, Plaintiff filed 35 pages of briefing supported by 50 exhibits totaling hundreds of additional pages, and Voya and Lincoln filed a 25-page opposition brief supported by 24 exhibits.

18.  On March 13, 2019, the Court granted-in-part Plaintiff's motion, certifying a breach-of-contract class for the claim against Voya. Dkt. 110. In so doing, the Court found that Plaintiff Hanks was an adequate class representative. *Id.* at 8–9 ("Hanks states that she understands her duties as a class representative and has dedicated a significant amount of time to working with her attorneys on this litigation. She owns one of the insurance policies that was subject to the 2016 COI rate increase and understands the facts underlying the dispute. She states that she does not have any conflicts of interest with putative class members." (citations omitted)). The Court also appointed Susman Godfrey as Class Counsel pursuant to Rule 23(g):

> Hanks requests the appointment of Susman Godfrey L.L.P. as class counsel. Susman Godfrey was appointed as interim class counsel on February 9, 2017. The firm has provided competent representation for Hanks since this action's commencement. It has successfully conducted discovery and its submissions reflect knowledge of the law governing Hanks' claims and familiarity with class action procedures. Its performance in the present case demonstrates competence to protect the interests of the class.
>
> Hanks' counsel has significant experience litigating class actions. Plaintiff's counsel has demonstrated that it has adequate resources to litigate this action and is experienced in litigating class actions generally. The Court appoints Susman Godfrey as class counsel.

*Id.* at 20–21 (citations omitted). The Court denied the motion for class certification for the unjust enrichment claim against Lincoln. *Id.* at 16–20. The parties stipulated to a voluntary dismissal of Lincoln without prejudice. Dkts. 131–32.

6

19.     The Court approved Plaintiff's proposed notice plan on April 23, 2019, finding the form and manner of notice proposed by Plaintiff met "the requirements of Rule 23 and due process, constitute[d] the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto." Dkt. 122. The Court also approved the retention of JND Legal Administration LLC ("JND") as the Notice Administrator. *Id.* Pursuant to the Court's order (Dkt. 122), JND mailed the short-form notices and established a Notice website and case-specific toll-free number on June 13, 2019. *See* Dkt. 130. Also pursuant to the Court's order, the notice period ended on July 29, 2019 (45 days after mailing). Class Counsel worked with JND to effectuate the Court's order on the form and manner of notice. Twelve policies timely and validly opted out.

20.     The parties next briefed summary judgment. Voya's motion for summary judgment was filed on September 12, 2019; Plaintiff's cross-motion for partial summary judgment and opposition was filed on November 6, 2019; Voya's opposition and reply was filed on December 18, 2019; and Plaintiff's reply was filed on January 17, 2020. Dkts. 133–45, 148–152. Collectively, Plaintiff filed 100 pages of briefing supported by 83 exhibits totaling hundreds of additional pages, which included a flash drive with detailed and extensive policy and actuarial data. Voya filed a combined 93 pages of briefing supported by 29 exhibits.

21.     On September 30, 2020, the Court denied Plaintiff's cross-motion for partial summary judgment and granted-in-part and denied-in-part Voya's motion for summary judgment. Dkt. 174. The Court granted summary judgment on some of Plaintiff's theories of breach, but held:

> Here, an issue of material fact remains as to whether the 2016 COI Adjustment was based on analysis of cost factors related to the in-force polices as mandated by the terms of the Policy or was based on Lincoln Life's profitability goals. Hanks puts forth evidence and expert opinions supporting its position that the 2016 COI

7

Adjustment was based not on an evaluation of future cost factors, but was implemented on the basis of improper considerations with the aim of "increas[ing] anticipated future profitability." Voya disputes this evidence and has come forward with evidence and expert opinions tending to show that contractually proper future cost factors were the basis of the 2016 COI Adjustment. But at bottom these are disputed issues of material fact and the Court will deny Voya's motion for summary judgment.

*Id.* at 24–25 (citations omitted).

22. Class Counsel held a full-day mock trial on January 15, 2021 with a nationally renowned mock trial consultant. The mock trial required weeks of preparation and the creation of extensive multimedia presentations and included three panels of mock jurors. Class Counsel used information from the mock trial in drafting its pretrial filings and preparing for trial. The mock trial occurred virtually during the COVID-19 pandemic and required numerous hours of additional coordination and preparation.

23. The parties next briefed pretrial motions *in limine*. The parties filed non-damages motions *in limine* on January 28, 2021; non-damages oppositions on February 25, 2021; damages motions *in limine* on March 5, 2021; non-damages replies on March 11, 2021; damages oppositions on April 5, 2021; and damages replies on April 19, 2021. Dkts. 189–212, 230–35, 241–43. The parties also filed supplemental briefing related to one of Voya's motions *in limine* on June 11, 2021. Dkts. 254–57. Collectively, Plaintiff filed nine motions *in limine* and opposed four motions *in limine*, supported by 112 pages of briefing and 49 exhibits totaling hundreds of additional pages. Plaintiff also filed a proposed verdict form, proposed voir dire questions, and proposed jury instructions on March 16, 2021. Dkts. 213–15, 217. On April 27, 2021, the parties filed their Proposed Final Pretrial Order. Dkt. 244. It included witness lists, deposition designations, and exhibit lists. *Id.*

24. The Final Pretrial Conference was held on May 12, 2021. Dkts. 250–51. Attached as **Exhibit 4** is a true and correct copy of the transcript of the Final Pretrial Conference. On

August 31, 2021, the Court informed the parties that the matter was set as the backup trial for the week of December 6, 2021. Dkt. 263.

25. The parties have mediated and exchanged numerous offers and counter-offers throughout the life of the case. The parties first mediated at the encouragement of the Court near the outset of the case on June 7, 2017 in New York with David Geronemus, Esq. This mediation did not result in any settlement. The parties again discussed settlement in 2019 after discovery was completed and certification was granted, and mediated with Nancy Lesser, Esq., which included in-person mediations in New York on November 13, 2019 and March 6, 2020. These mediation efforts also did not result in any settlement. The parties continued discussing settlement throughout 2020, and exchanged numerous letters, with offers and counteroffers, but remained too far apart to enter into a settlement agreement. Before the Final Pretrial Conference, the parties met and conferred and agreed to mediate again before trial.

26. The final in-person mediation occurred in person on August 11, 2021 with mediator Robert Meyer, Esq. at the JAMS Century City office in Los Angeles, California.

27. A month before the mediation, in July 2021, Voya supplemented its damages data production through May 31, 2021. Using the methodology described in the March 1, 2018 Expert Report of Robert Mills, and in advance of the mediation, Mr. Mills calculated overcharges for the Class Policies through May 31, 2021 (excluding the twelve policies that previously opted out). The overcharges totaled $121,708,160.

28. I attended this mediation in person along with other members of my team, and Voya's and Lincoln's counsel appeared in person as well. The mediation lasted until late in the day on August 11, 2021. The parties were unable to reach an agreement but agreed to continue discussing settlement. The parties repeatedly met and conferred in September and October

through and with the assistance of the mediator and exchanged offers and counteroffers. This ultimately resulted in the parties executing a Settlement Term Sheet on October 21, 2021 and after additional negotiations over the next few months, the final Settlement Agreement (Exhibit 1) on January 5, 2022.

29. Class Counsel has actively litigated this case for years—through fact and expert discovery, class certification, summary judgment, and pre-trial motions—and is well versed in all the factual and legal issues posed by this litigation. Before mediation, Class Counsel took steps to ensure that we had all the necessary information to advocate for a fair, adequate, and reasonable settlement that serves the best interests of the Settlement Class. During mediation and in the settlement discussions that followed, Class Counsel aggressively advocated for the class, while taking into account the strengths and weaknesses of the claims asserted, the risks of continued litigation and trial, and the likelihood of recovery.

30. The specific terms and conditions of the Settlement are set forth in the Settlement Agreement (Exhibit 1). The monetary and nonmonetary benefits for the Settlement Class are the following:

- **CASH:** A cash Settlement Fund of up to $92,500,000.
  - This cash fund is equal to 76% of COI overcharges collected through March 31, 2021 ($92,500,000/$121,708,160).
  - For any policy that opts out during the Federal Rule of Civil Procedure 23(e)(4) period, the Settlement Fund decreases on a pro rata basis measured by the incremental COI charges collected by Voya and Lincoln from June 1, 2016 through May 31, 2021 (the "Final Settlement Fund"). No portion of the Final Settlement Fund will revert to Voya or Lincoln, and checks will be mailed directly to class members without having to fill out claim forms.
- **COI RATE FREEZE:** A total and complete freeze on any cost of insurance increase for five years, subject only to any increase affirmatively required by Voya's regulator. Thus, even if Voya or Lincoln has a future change in cost factors that would otherwise permit a COI rate increase under the terms of the policies—

including any cost factors that may have increased due to any surge in mortality due to the COVID-19 pandemic—Voya and Lincoln will not increase COI rates for 5 years. Policyholders now have the ability to predict, with certainty, what their COI obligations will be for a substantial period of time.

- **VALIDITY STIPULATION & STOLI WAIVER:** As part of the Settlement, Voya and Lincoln have agreed not to challenge the validity and enforceability of any eligible policies owned by participating Class members on the grounds of lack of an insurable interest, stranger originated life insurance ("STOLI"), or misrepresentations in the application for such policies.

31. In my opinion, the cash payment alone adequately compensates the members of the Settlement Class for their damages in view of the risks of litigation. As discussed above, Class Counsel, with the assistance of its damages expert Mr. Mills, analyzed data provided by Voya and Lincoln and determined that, as a result of the 2016 COI increase, the Class Policies paid, through May 31, 2021, $121,708,160 more in COI charges than they would have had the COI increase not been implemented. A cash fund by Voya and Lincoln of $92.5 million therefore represents 76% of those alleged overcharges through that period.

32. The Class will further benefit because checks will be mailed automatically to eligible Class Members, with no need to fill out claim forms, and none of the cash in the Final Settlement Fund will be returned to Voya or Lincoln.

33. In addition to the cash payment to the Class, the Settlement Agreement states Voya will provide two non-monetary benefits to the Class: (i) a promise not to raise COI rates for the next 5 years (the "COI Rate Freeze"), absent being affirmatively required to do so by regulators; and (ii) a promise not to contest a death claim on the grounds that the policy lacks an insurable interest or that the application policy contained misrepresentations (the "Validity Stipulation"). As described in the "Report on the Value of the Non-Monetary Benefits Achieved in the Class Action Settlement with Voya" filed concurrently with Class Counsel's "Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Award," a reasonable estimate of the

value of the COI Rate Freeze is $25,985,761 and a reasonable estimate of the value of the Validity Stipulation is $246,193. These non-monetary guarantees, totaling $26,231,954, provide substantial benefits to the Class that could not have been obtained even if the litigation had been successful.

34. It is the opinion of Class Counsel that the Settlement with Voya and Lincoln is fair and reasonable, especially in view of the large size of the cash payment by Voya and Lincoln, Class Counsel's detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood and timing of recovery, if any.

35. Following negotiations for this Settlement, Class Counsel expended time and effort drafting and filing papers in support of preliminary approval of this Settlement. Class Counsel will expend further time and effort drafting and filing papers in support of final approval of this Settlement.

36. The schedule below is a summary reflecting the amount of time spent, through March 31, 2022, by the attorneys and professional support staff of Susman Godfrey who were involved in this litigation, and the lodestar calculation using Susman Godfrey's 2022 billing rates or equivalent 2022 billing rates for an attorney or paralegal who left the firm prior to 2022. The following schedule was prepared from daily time records regularly prepared and maintained by Susman Godfrey, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses are excluded and not reflected below.

| Attorneys | Current Rate | Hours | Value |
|---|---|---|---|
| Ard, Seth (Partner) | $975 | 1,215.10 | $1,184,722.50 |
| Kirkpatrick, Ryan (Partner) | $900 | 1,057.60 | $951,840.00 |
| Sklaver, Steven (Partner) | $1,200 | 1,285.90 | $1,543,080.00 |
| Srinivasan, Kalpana (Partner) | $1,300 | 16.80 | $21,840.00 |

| | | | |
|---|---|---|---|
| Bridgman, Glenn (Partner/Associate)[1] | $650 | 91.30 | $59,345.00 |
| Gervais, Michael (Partner/Associate)[2] | $675 | 2,430.40 | $1,640,520.00 |
| Adamson, Michael (Associate) | $625 | 32.50 | $20,312.50 |
| Nath, Rohit (Associate) | $625 | 35.30 | $22,062.50 |
| Ochoa, Omar (Associate) | $650 | 777.10 | $505,115.00 |
| Spear, Nicholas (Associate) | $625 | 2,988.40 | $1,867,750.00 |
| Adimora, Brenda (Staff Attorney) | $350 | 48.80 | $17,080.00 |
| Fenwick, Samantha (Staff Attorney) | $375 | 210.70 | $79,012.50 |
| Kaminsky, Alex (Staff Attorney) | $375 | 20.00 | $7,500.00 |
| **Paralegals** | **Current Rate** | **Hours** | **Value** |
| Arreola, Norberto | $325 | 1,368.30 | $444,697.50 |
| Bruton, Rhonda | $325 | 77.10 | $25,057.50 |
| Choksi, Aashka | $275 | 2.80 | $770.00 |
| DeGeorges, Simon | $325 | 67.60 | $21,970.00 |
| Gheen, Kate | $300 | 22.50 | $6,750.00 |
| Maldonado, Christopher | $225 | 6.80 | $1,530.00 |
| Orihuela, Judith | $300 | 3.40 | $1,020.00 |
| Santos, Vanessa | $325 | 141.40 | $45,955.00 |
| Wojtczak, Richard | $350 | 1.30 | $455.00 |
| **Totals** | | **11,901.10** | **$8,468,385.00** |

37. The total number of hours expended on this litigation by Susman Godfrey's attorneys, paralegals, and staff is 11,901.10 hours through March 31, 2022. The total lodestar value of Susman Godfrey's professional services, derived by multiplying each professional's hours by his or her current hourly rates, is $8,468,385. All time spent litigating this matter was reasonably necessary and appropriate to prosecute the action, and the results achieved further confirm that the time spent on the case was proportionate to the amounts at stake.

---

[1] Mr. Bridgman was an associate for the vast majority of his time on this case; he was promoted to partner in January 2022.
[2] Mr. Gervais was an associate for part of his time on this case; he was promoted to partner in January 2020.

13

38. The hourly rates for Susman Godfrey's attorneys and professional support staff are the firm's standard hourly rates. The hourly rates of Class Counsel's attorneys range from $350–375 for staff attorneys, $625–650 for associates, and $650–1,300 for partners. Susman Godfrey only has equity partners. All partners and associates who worked on this case are based in either New York or Los Angeles, with the exception of Mr. Ochoa, who was based in Houston. The hourly rates of paralegals range from $225 to $350.

39. In a nationwide survey of AmLaw 50 law firms performed by PwC Product Sales, LLC and issued in October 2021, the median standard billing rate for equity partners was $1,253, the 1st quartile standard billing rate was $1,397, and the 3rd quartile standard billing rate was $1,144. Mssrs. Ard, Bridgman, Gervais, and Kirkpatrick have billing rates below the 3rd quartile standard billing rate, Mr. Sklaver has a billing rate below the median billing rate, and Ms. Srinivasan, Susman Godfrey's Managing Partner, has a billing rate slightly above the median, but below the 1st quartile billing rate.

40. The same survey stated that the median standard billing rate for associates was $819, the 1st quartile standard billing rate was $892, and the 3rd quartile standard billing rate was $709. Mssrs. Adamson, Bridgman, Gervais, Nath, Ochoa, and Spear have or had billing rates below the 3rd quartile standard billing rate.

41. Pursuant to the Court's "Order Preliminarily Approving Class Action Settlement," Class Counsel seeks an award of attorney's fees in the amount of 33% of the Final Settlement Fund. The Final Settlement Fund is the amount of the Settlement Fund after any *pro-rata* reductions for Class Members that opt out during the Federal Rule of Civil Procedure 23(e)(4) opt-out period. *See* Exhibit 1, ¶¶ 16, 44. As of March 31, 2022, there have been 3 opt outs. The overcharges for these policies are 0.0012% of the total overcharges. The Final Settlement Fund

after the *pro-rata* reduction for these policies is $92,498,902.63, meaning that the amount Class Counsel is currently seeking in attorney's fees is $30,524,637.87 (33% of the projected Final Settlement Fund, assuming no further opt outs). This represents 25.7% of the gross settlement value (monetary and nonmonetary) available to Class Members.

42.  Unlike many firms on the class action side, Susman Godfrey represents plaintiffs and defendants. When entering into result-based fee deals, Susman Godfrey strives for a substantial return on its investment in time and expenses to compensate for risks and opportunity costs, including the opportunity to work on hourly billing work that provides a steady income stream. As is common in the industry, Susman Godfrey's contingency percentages are traditionally based on the gross amount recovered and provide for the recoupment of any advanced expenses.

43.  Susman Godfrey frequently takes high-stakes non-class commercial cases on a contingent fee basis. In cases like this one where the firm is advancing expenses, the firm has a standard contingency agreement, under which it receives 40% of the gross sum recovered by a settlement that is agreed upon, or other resolution that occurs, on or before the 60th day preceding any trial, plus reimbursement of expenses. Sophisticated parties and institutions have agreed to these market terms. The requested fee here of 33% of the Final Settlement Fund viewed in isolation or 25.7% of the value of the gross settlement benefit is far *less* than what Susman Godfrey would receive under its standard contingency agreement entered into in a competitive market.

44.  As described above, the total lodestar value of Susman Godfrey's professional services is $8,468,385.00. The requested attorney's fee as of March 31, 2022—$30,524,637.87—is a lodestar multiplier of 3.6.

45. As detailed and categorized in the below schedule, Susman Godfrey has advanced a total of $2,183,929.18 in un-reimbursed expenses in connection with the prosecution of this litigation. These expenses were reasonably necessary to the prosecution of this action and directly benefitted the Class, and are of the type that Susman Godfrey normally incurs in litigation.

| Expense Category | Cumulative Expenses |
| --- | --- |
| Deposition Expenses | $114,356.19 |
| Document Review Hardware/Hosting | $86,149.15 |
| Expert/Consultants | $1,553,335.37 |
| Filing/Service/Court Reporter Fees/Transcripts/Court Fees | $6,503.89 |
| Mediation | $27,092.05 |
| Notice of Pendency of Class Certification | $76,189.21 |
| Photocopies/Reproduction/Messenger Services | $40,311.70 |
| Research/Westlaw/Freedom of Information Requests | $94,484.12 |
| Travel/Meals/Hotels/Transportation | $71,155.59 |
| Trial Preparation (including Mock Trial) | $114,351.91 |

46. The amount of Settlement Administration Expenses incurred by Settlement Administrator JND through March 18, 2022 is $49.661.66. *See* Declaration of Kimberly K. Ness ¶ 3. Pursuant to the Court's "Order Preliminary Approval Class Action Settlement" ¶ 7 (Dkt. 286), Class Counsel seeks permission to reimburse the foregoing Settlement Administration Expenses pursuant to paragraphs 16 and 32 of the Settlement Agreement, and such additional expenses as may be incurred by the Settlement Administrator.

47. Class Counsel will update the information in this information conjunction with its "Reply in Support of the Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Award," due on June 22, 2022.

48. Plaintiff Helen Hanks has generously contributed her time for the benefit of the Class and, in the opinion of Class Counsel, is deserving of the requested service award of $25,000. Ms. Hanks was continuously involved in the litigation and settlement process: she reviewed

10504414v1/015301

discovery requests and responses, searched for and provided documents, reviewed pleadings and other court filings, prepared and sat for her deposition, and has communicated regularly with Class Counsel throughout this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of April, 2022 in New York, NY.

                                           /s/ Seth Ard
                                           Seth Ard
                                           Susman Godfrey L.L.P.
                                           1301 Avenue of the Americas, 32nd Floor
                                           New York, NY 10019
                                           Tel: 310-789-3100
                                           Fax: 310-789-3150
                                           sard@susmangodfrey.com
                                           *Class Counsel*

**CERTIFICATE OF SERVICE**

       This is to certify that a true and correct copy of the foregoing instrument has been served on the following counsel, this April 4, 2022.

Alan B. Vickery
Boies Schiller Flexner LLP
333 Main Street
Armonk, New York 10504
Tel: (914) 749-8200
Fax: (914) 749-8300
avickery@bsfllp.com
efruchter@bsfllp.com

John F. LaSalle
Andrew Villacastin
Boies Schiller Flexner LLP
55 Hudson Yards
20th Floor
New York, NY 10001
Tel: (212) 446-2300
Fax: (212) 446-2350
jlasalle@bsfllp.com
avillacastin@bsfllp.com

Motty Shulman
Robin A. Henry
Glenn L. Radecki
Bryan McIntyre
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000 (telephone)
(212) 859-4000 (facsimile)
motty.shulman@friedfrank.com
robin.henry@friedfrank.com
glenn.radecki@friedfrank.com

*Attorneys for Voya Retirement Insurance and Annuity Company, formerly known as Aetna Life Insurance and Annuity Company*

                                                                      */s/ Nicholas N. Spear*
                                                                          Nicholas N. Spear