Exhibit 2

Execution Version

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HELEN HANKS, on behalf of herself and all others similarly situated,<br><br>                       Plaintiff,<br><br>        vs.<br><br>VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY, formerly known as Aetna Life Insurance and Annuity Company,<br><br>                  Defendant. | Case No. 16-cv-6399<br><br>Judge P. Kevin Castel |

## JOINT STIPULATION AND SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED AND AGREED, subject to approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, by and between: (i) Plaintiff Helen Hanks, individually and on behalf of the Class; (ii) Defendant Voya Retirement Insurance and Annuity Company; and (iii) Lincoln Life & Annuity Company of New York, that the causes of action and matters raised by and related to this lawsuit, as captioned above, are hereby settled and compromised on the terms and conditions set forth in this Joint Stipulation and Settlement Agreement.

This Agreement is made and entered into by and between Plaintiff, Voya and Lincoln and is intended to fully, finally, and forever resolve, discharge, and settle the Action and Released Claims upon and subject to the terms and conditions hereof.

## I.    DEFINITIONS AND CONSTRUCTION

Capitalized terms in this Agreement shall have the meaning set forth below:

1.      "Action" means the lawsuit, captioned *Helen Hanks v. Voya Retirement Insurance and Annuity Company of New York*, Case No. 16-cv-6399 (PKC), currently pending in the United States District Court for the Southern District of New York.

2.      "Agreement" means this Joint Stipulation and Settlement Agreement.

3.      "Claims" means all suits, claims, cross-claims, counter-claims, controversies, liabilities, demands, obligations, debts, indemnities, costs, fees, expenses, losses, liens, actions, or causes of action (however denominated), including Unknown Claims, of any nature, character, or description, whether in law, contract, statute, or equity, direct or indirect, whether known or unknown, foreseen or not foreseen, accrued or not yet accrued, present or contingent, for any injury, damage, obligation, or loss whatsoever, including but not limited to compensatory damages, statutory damages, liquidated damages, exemplary damages, punitive damages, losses, costs, expenses, or attorneys' fees.

4.      "Class" means the class certified by the Class Certification Order, more specifically "[a]ll owners of universal life (including variable universal life) insurance policies issued by Aetna Life Insurance and Annuity Company ('Aetna') that were subjected to the cost of insurance rate increase announced in 2016." *See* Class Certification Order at 1.  Specifically excluded from the Class are the Class Certifications Opt-Outs; Class Counsel and their employees; Voya and Lincoln; officers and directors of Voya and Lincoln, and members of their immediate families; the heirs, successors or assigns of any of the foregoing; the Court, the Court's staff, and their immediate families.

5.      "Class Certification Opt-Outs" means the policies that timely and validly opted-out during the notice period following the Class Certification Order, specifically: Policy Nos.

F1526536, G1060228, G1066983, G1126564, G1194083, G1242387, G1366304, G1426106, U1003277, U1065745, U1151278 and U1259092.

6.      "Class Certification Order" means the Court's March 13, 2019 Opinion and Order (Dkt. 110).

7.      "Class Counsel" means Susman Godfrey L.L.P., the attorneys appointed as class counsel by the Court pursuant to Federal Rule of Civil Procedure 23(g) in the Class Certification Order.

8.      "Class Counsel's Fees and Expenses" means the amount of the award approved by the Court to be paid to Class Counsel from the Final Settlement Fund for attorneys' fees and reimbursement of Class Counsel's costs and expenses.

9.      "Class Notice" means the notice of the Settlement approved by the Court to be sent by the Settlement Administrator to the Class.

10.     "COI" means cost of insurance.

11.     "Confidential Information" means material designated as "Confidential" in accordance with the terms of the Stipulated Confidentiality Agreement and Protective Order and Addendum entered in the Action on January 19, 2017 (Dkt. 39).

12.     "Court" means The United States District Court for the Southern District of New York, Hon. P. Kevin Castel.

13.     "Excluded Claims" means new claims that could not have been asserted in the Action because they are based upon a future rate schedule increase in Voya's COI charges that occurs after October 20, 2021.  Excluded Claims are limited to claims that are excluded as a matter of law and to incremental claims and damages that could not have been included in the Action

because a future rate scale increase in Voya's COI charge has not yet taken place and do not include any claims or damages for COI charges using the rate schedule in place as of October 20, 2021.

14.     "Final Approval Date" means the date on which the Court enters its Order and Judgment approving the Settlement.

15.     "Final Settlement Date" means the date on which the Order and Judgment becomes final, which shall be the latest of: (i) the date of final affirmance on any appeal of the Order and Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Order and Judgment; or (iii) if no appeal is filed, the expiration of the time for filing or noticing any form of valid appeal from the Order and Judgment.

16.     "Final Settlement Fund" means the cash fund after any reductions in the amount of the Settlement Fund pursuant to Section 44.  The Final Settlement Fund will be a single qualified settlement fund pursuant to 26 U.S.C. § 468B that will be used to pay: (i) Settlement Administration Expenses; (ii) any Incentive Award; (iii) any Class Counsel's Fees and Expenses awarded by the Court; (iv) all payments to the Settlement Class; and (v) any other payments provided for under this Settlement or the Order and Judgment.  There will be no reversion of any portion of the Final Settlement Fund to Voya or Lincoln.  All funds held in the Final Settlement Fund and all earnings thereon, shall be deemed to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed pursuant to the terms of this Agreement or further order of the Court.

17.     "Funding Date" means thirty-five (35) calendar days after the Final Approval Date.

18.     "Incentive Award" means the amount of an award approved by the Court to be paid to Plaintiff from the Final Settlement Fund, in addition to any settlement relief she may be eligible to receive, to compensate Plaintiff for efforts undertaken by her on behalf of the Settlement Class.

19.    "Lincoln" means Lincoln Life & Annuity Company of New York and its predecessor and successor entities.

20.    "Mediator" means Robert Meyer, Esq., with JAMS.

21.    "Net Settlement Fund" means the Final Settlement Fund less (i) Settlement Administration Expenses; (ii) any Incentive Award; (iii) any Class Counsel's Fees and Expenses awarded by the Court; and (iv) any other payments provided for under this Settlement or the Order and Judgment.

22.    "Order and Judgment" means the Court's order approving the Settlement and entering final judgment. The judgment will include a provision for the retention of the Court's jurisdiction over the Parties to enforce the terms of the judgment and for a bar order (consistent with the provisions of Sections 62–65) prohibiting claims by the Releasing Parties against Released Parties for the Released Claims.

23.    "Owner" or "Owners" means each current and former Policy's owner or owners, whether a person or entity and whether in an individual or representative capacity.

24.    "Parties" means, collectively, Plaintiff, Voya, and Lincoln.  The singular term "Party" means either of Plaintiff, Voya, or Lincoln, as appropriate.

25.    "Plaintiff" means Helen Hanks, individually and as representative of the Class, and her assigns, successors-in-interest, and representatives.

26.    "Policy" or "Policies" means any universal life (including variable universal life) insurance issued by Aetna Life Insurance and Annuity Company that was subjected to the cost of insurance rate increase announced in 2016 by Voya and Lincoln.

27.    "Post-Settlement Opt-Outs" means the Policies that timely elect to opt-out of the Settlement during the additional opt-out period provided in Section 44.

28.    "Released Claims" means all Claims asserted in the Action or arising out of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged or could have been alleged in the Action arising out of the facts alleged in the Action. Released Claims does not include Excluded Claims.

29.    "Released Parties" means Voya and Lincoln and their respective past, present, and future parent companies, direct and indirect subsidiaries, affiliates, predecessors, Voya's or Lincoln's joint ventures, successors and assigns, together with each of the their respective past, present, and future officers, directors, shareholders, employees, representatives, insurers, attorneys, and agents (including but not limited to, those acting on behalf of Voya or Lincoln and within the scope of their agency), including but not limited to, all of Voya's or Lincoln's heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, and including any person or entity acting on behalf or at the direction of any of them.

30.    "Releasing Parties" means Plaintiff and each Settlement Class Member, on behalf of themselves and their respective agents, heirs, relatives, representatives, attorneys, successors, trustees, subrogees, executors, assignees, and all other persons or entities acting by, through, under, or in concert with any of them.

31.    "Settlement" means the settlement set forth in this Agreement.

32.    "Settlement Administration Expenses" means all Class Notice and administrative fees, costs, or expenses incurred in administering the Settlement, including those fees incurred by the Settlement Administrator. Settlement Administration Expenses shall be paid from the Final Settlement Fund.

33.    "Settlement Administrator" means the third-party settlement administrator of the Settlement who is consented to by the Parties. Plaintiff shall be responsible for selecting the

Settlement Administrator and consent from Voya or Lincoln will not be unreasonably withheld. Voya and Lincoln pre-approve JND Legal Administration, previously approved by the Court in its April 23, 2019 Order Approving Form and Manner of Notice (Dkt. 122) to administer Class Notice, as the Settlement Administrator. The Settlement Administrator's fees shall be paid from the Final Settlement Fund.

34.    "Settlement Class" means the Class without the "Post-Settlement Opt-Outs."

35.    "Settlement Class Member(s)" means all persons and entities that are included in the Settlement Class.

36.    "Settlement Fund" means a cash fund consisting of the consideration paid for the benefit of the Settlement Class.

37.    "Settlement Fund Account" means the escrow account from which all payments out of the Settlement Fund will be made.  The Settlement Fund Account shall be established under terms acceptable to the Parties at a depository institution and such funds shall be invested in instruments backed by the full faith and credit of the United States Government (or a mutual fund or funds invested solely in such instruments), shall be deposited in non-interest-bearing transaction accounts that are fully insured by the Federal Deposit Insurance Corporation in the amounts that are up to the limit of FDIC insurance.  The Parties and their respective counsel shall have no responsibility for or liability whatsoever with respect to investment decisions made for the Settlement Fund Account.  All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Class.

38.    "Unknown Claims" means any claims asserted, that might have been asserted or that hereafter may be asserted arising out of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged in the Action with respect

to the Released Claims that the Releasing Parties do not know or suspect to exist in his or her favor at the Final Approval Date, and which if known by him or her might have affected his or her decision to opt-out of or object to the Settlement.

39.    "Voya" means Defendant Voya Retirement Insurance and Annuity Company and its predecessor and successor entities.

40.    The terms "he or she" and "his or her" include "it" or "its," where applicable. Defined terms expressed in the singular also include the plural form of such term, and vice versa, where applicable.

41.    All references herein to sections and paragraphs refer to sections and paragraphs of this Agreement, unless otherwise expressly stated in the reference.

## II.    **SETTLEMENT RELIEF**

## 1.    **Cash Consideration to the Settlement Class**

42.    Voya shall cause Lincoln to fund and Lincoln agrees to fund, the Settlement Fund, in the amount of $92,500,000, by the Funding Date.  If an appeal of the Court's Order and Judgment providing Final Approval of the Settlement is filed, Lincoln shall have the option to either:

(i)    fund the Final Settlement Fund on the Funding Date into an escrow account under the control of the Settlement Administrator or other mutually agreeable escrow agent; or

(ii)    fund the Final Settlement Fund only upon entry of a final non-appealable order approving the Settlement but pay interest on the Final Settlement Fund for the time period between the Funding Date and the actual payment date at a rate of 1% per annum, simple interest.

43.     Apart from causing Lincoln to fund the Settlement Fund, Voya shall have no obligations as it relates to payment of the cash considerations for the Settlement Fund, but if Lincoln does not fund the Settlement Fund, as provided herein, then the releases provided for below are not effective as against Voya or Lincoln.

44.     Approval of the Settlement shall provide for opt-outs pursuant to Federal Rule of Civil Procedure 23(e)(4).  The Settlement Fund shall be reduced, on a pro-rata basis measured by the incremental COI charges collected by Voya and Lincoln from June 1, 2016 through May 31, 2021, for each Post-Settlement Opt-Out. By way of example, if 1% of the total incremental COI charges collected by Voya and Lincoln from June 1, 2016 through May 31, 2021 are attributable to Post-Settlement Opt-Outs, the Settlement Fund will be reduced by 1% (*i.e.*, to $91.575 million). No reduction shall be made on account of the Class Certification Opt-Outs.

45.     Any disputes regarding the reduction of the Settlement Fund shall first be presented to the Mediator for potential resolution, and, absent resolution, to the Court for a determination. The Settlement Fund, after any reduction for Post-Settlement Opt-Outs is referred to herein as the Final Settlement Fund, and the Class Policies that do not timely and validly opt-out during the additional opt-out period provided in Section 44 constitute the Settlement Class.  For the avoidance of doubt, if an Owner (such as a securities intermediary or trustee) owns multiple policies on behalf of different principals, that Owner may stay in the Settlement Class as to some Policies and opt-out of the Settlement Class for other Policies. The Parties agree that the opt-out reduction methodology set forth in Section 44 is proposed solely for settlement purposes and may not be used as an admission or evidence of the validity of any damages model regarding any alleged wrongdoing by Voya or Lincoln.

46.     Notwithstanding anything in this Agreement, if the total percentage of the Settlement Class (as measured by the face amount of the Policy) submit timely and valid requests for exclusion from the Settlement Class, or on whose behalf timely and valid requests for such exclusion are submitted, exceeds the percentage set forth in Section 5 of the Confidential Exhibit A (which will be provided to the Court upon request), Voya or Lincoln shall have the option, but not the obligation, to terminate this Agreement no later than 7 business days after the opt-out period contemplated by Section 44 expires.

47.     The Net Settlement Fund shall be distributed to the Settlement Class pursuant to a distribution formula or other process to be developed by Class Counsel and approved by the Court. Voya and Lincoln will not oppose any such proposed plan of allocation.

48.     Neither Voya nor Lincoln shall be required make any payments in connection with this Action other than the Final Settlement Fund amount.

**2.      Non-Cash Consideration to the Settlement Class**

49.     For a period of five (5) years following the Final Approval Date, Voya and Lincoln agree that COI rates on the Class Policies will not be increased above the current rate schedules implemented on June 1, 2016, unless Voya is ordered to do so by a state regulatory body.  Subject to and without waiving the provision provided for in the preceding sentence, nothing in this Agreement shall otherwise restrict Voya or Lincoln from making adjustments or recommending adjustments to the COI rates that comply with the terms of any Class Policy.

50.     Voya and Lincoln agree to not take any legal action (including asserting as an affirmative defense or counter-claim), or cause to take any legal action, that seeks to void, rescind, cancel, have declared void, or seeks to deny coverage under or deny a death claim for any Class Policy based on:  (1) an alleged lack of valid insurable interest under any applicable law or

equitable principles; or (2) any misrepresentation allegedly made on or related to the application

for, or otherwise made in applying for the policy.  The covenant set forth in this paragraph is solely

prospective, and does not apply to any actions taken by Voya or Lincoln in the past.  With the

exception of the foregoing, nothing contained in this Agreement shall otherwise restrict Voya or

Lincoln from:  (i) following its normal procedures and any applicable legal requirements regarding

claims processing, including but not limited to confirming the death of the insured; determining

the proper beneficiary to whom payment should be made in accordance with applicable laws, the

terms of the policy and policy specific documents filed with Voya or Lincoln; and investigating

and responding to competing claims for death benefits; (ii) enforcing contract terms and applicable

laws with respect to misstatements regarding the age or gender of the insured; (iii) complying with

any court order, law or regulatory requirements or requests, including but not limited to,

compliance with regulations relating to the Office of Foreign Asset Control, Financial Industry

Regulatory Authority and Financial Crimes Enforcement Network; (iv) taking action with respect

to any alleged misrepresentations made in connection with an application to reinstate a Class

Policy that was made after September 1, 2021; or (v) refusing to pay a death claim on a policy that

is determined to be invalid or void through actions of a party other than Voya or Lincoln.

## III.    PRELIMINARY APPROVAL AND CLASS NOTICE

51.    The Parties agree that Plaintiff shall move for an order seeking preliminary

approval of the Settlement, which shall include a request to notify the Class of the settlement and

provide a period during which Class members can request exclusion from the settlement, by

January 6, 2022.  Plaintiff will share a draft of the motion seeking approval of the Settlement (and

all other settlement related filings (excluding Class Counsel's motion for Plaintiff's Incentive

Award and Class Counsel's Fees and Expenses)) with Voya and Lincoln no less than 5 business

days before it is filed, and Voya and Lincoln will not oppose the motion or any proposed Class

Notice plan.  To the extent the Court finds that the Settlement does not meet the standard for

preliminary approval, the Parties will negotiate in good faith to modify the Settlement directly or

with the assistance of the Mediator and endeavor to resolve the issue(s) to the satisfaction of the

Court.

52.     Plaintiff's form of Class Notice will be direct mailing to Owner address information

that is available from Voya's and/or Lincoln's files as well as publication notice through a website

such as the one used after certification of the class (*e.g.*, htps://www.voyacoilitigation.com/).

53.     Settlement Class Members may object to this Settlement by filing a written

objection with the Court and serving any such written objection on counsel for the respective

Parties (as identified in the Class Notice) no later than 45 calendar days after the Notice Date, or

as otherwise determined by the Court.  Unless otherwise ordered by the Court, the objection must

contain:  (1) the full name, address, telephone number, and email address, if any, of the Settlement

Class Member; (2) Policy number; (3) a written statement of all grounds for the objection

accompanied by any legal support for the objection (if any); (4) copies of any papers, briefs, or

other documents upon which the objection is based; (5) a list of all persons who will be called to

testify in support of the objection (if any); (6) a statement of whether the Settlement Class Member

intends to appear at the Fairness Hearing; and (7) the signature of the Settlement Class Member or

his/her counsel and identification by case name and number of all previous class action objections

filed by the Settlement Class Member or his/her counsel in any proceeding in the previous five

years.  If an objecting Settlement Class Member intends to appear at the Fairness Hearing through

counsel, the written objection must also state the identity of all attorneys representing the objecting

Settlement Class Member who will appear at the Settlement Hearing.  Unless otherwise ordered

by the Court, Settlement Class Members who do not timely make their objections as provided in this Paragraph will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the Settlement. The Class Notice shall advise Settlement Class Members of their right to object and the manner required to do so.

54.    Within 10 calendar days following the filing of this Agreement with the Court, Voya shall serve notices of the proposed Settlement upon appropriate officials in compliance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715.

## IV.    INCENTIVE AWARD AND FEES AND EXPENSES

55.    Plaintiff will move for an Incentive Award from the Final Settlement Fund in an amount up to but not more than $25,000. Voya and Lincoln will not oppose Plaintiff's motion. The purposes of such an award shall be to compensate the Plaintiff Helen Hanks for efforts undertaken by her on behalf of the Class. The Incentive Award shall be made to Plaintiff in addition to, and shall not diminish or prejudice in any way, any settlement relief which she may be eligible to receive.

56.    Plaintiff will move for attorneys' fees not to exceed 33% of the gross benefits provided to the Settlement Class (as described in §§ 42-50 above), and reimbursement for all expenses incurred or to be incurred, payable only from the Final Settlement Fund. Class Counsel's Fees and Expenses, as awarded by the Court, may be paid from the Final Settlement Fund, at Plaintiff's option, immediately upon entry of an order approving such fees and expenses, or at a later date if required by the Court. Voya and Lincoln agree not to oppose Plaintiff's motion for Class Counsel's Fees and Expenses to the extent Plaintiff's request does not exceed the amounts set forth above.

57.     Neither Plaintiff, Voya, nor Lincoln shall be liable or obligated to pay any fees, expenses, costs, or disbursements to any person, either directly or indirectly, in connection with the Action, this Agreement, or the Settlement, other than those expressly provided in this Agreement.

58.     The Parties agree that the Settlement is not conditioned on the Court's approval of the Incentive Award or Class Counsel's Fees and Expenses.

## V.     TAX REPORTING AND NO PREVAILING PARTY

59.     Any person or entity receiving any payment or consideration pursuant to this Agreement shall alone be responsible for the reporting and payment of any federal, state and/or local income or other form of tax on any payment or consideration made pursuant to this Agreement, and neither Voya nor Lincoln shall have obligations to report or pay any federal, state and/or local income or other form of tax on any payment or consideration made pursuant to this Agreement.

60.     All taxes resulting from the tax liabilities of the Settlement Fund shall be paid solely out of the Final Settlement Fund.

61.     No Party shall be deemed the prevailing party for any purposes of this Action.

## VI.     RELEASES AND WAIVERS

62.     Upon the Final Settlement Date, the Releasing Parties shall be deemed to have, and by operation of the Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged the Released Parties of and from all Released Claims.  The Released Claims do not include any Excluded Claims.

63.     The Releasing Parties hereby expressly further agree that they shall not now or hereafter institute, maintain, assert, join, or participate in, either directly or indirectly, on their own

behalf, on behalf of a class, or on behalf of any other person or entity, any action or proceeding of any kind against the Released Parties asserting Released Claims.

64.     With respect to any Released Claims under this Agreement, the Parties stipulate and agree that, upon the Final Settlement Date, the Releasing Parties shall be deemed to have, and by operation of the Order and Judgment shall have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

The Releasing Parties shall upon the Final Settlement Date be deemed to have, and by operation of the Order and Judgment shall have, waived any and all provisions, rights, or benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. The Releasing Parties may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Releasing Parties upon the Final Settlement Date, shall be deemed to have, and by operation of the Order and Judgment shall have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct relating to the Released Claims that is negligent, intentional, with or without malice, or any breach

of any duty, law, or rule without regard to subsequent discovery or existence of such different or additional facts.

65.    Nothing in this Release shall preclude any action to enforce the terms of this Agreement.

66.    The scope of the Released Claims or Released Parties shall not be impaired in any way by the failure of any Settlement Class Member to actually receive the benefits provided for under this Agreement.

67.    Notwithstanding the foregoing, for purposes of clarification only, this Agreement shall not release Voya or Lincoln from paying any future death benefits that may be owed.

## VII.    OTHER PROVISIONS

68.    The Parties:  (i) acknowledge that it is their intent to consummate this Agreement, (ii) agree to cooperate in good faith to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to fulfill the foregoing terms and conditions of the Agreement, and (iii) agree to cooperate in good faith to obtain preliminary and final approval of the Settlement and to finalize the Settlement.  The Parties agree that the amounts paid in the Settlement and the other terms of the Settlement were negotiated in good faith, and at arm's length by the Parties, with the assistance of the Mediator, following numerous mediations including before the Mediator on August 11, 2021, and additional follow-on communications, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

69.    No person or entity shall have any claim against Class Counsel, the Settlement Administrator, Voya's counsel, Lincoln's counsel, or any of the Released Parties based on actions

taken substantially in accordance with the Agreement and the Settlement contained therein or further orders of the Court.

70.    Voya and Lincoln specifically and generally deny any and all liability or wrongdoing of any sort with regard to any of the Claims in the Action and make no concessions or admissions of liability of any sort.  Neither this Agreement, nor the Settlement, nor any drafts or communications related thereto, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the Settlement:  (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Claims, or of any wrongdoing or liability of the Released Parties, or any of them; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Released Parties, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal. Nothing in this paragraph shall prevent Voya, Lincoln, and/or any of the Released Parties from using this Agreement and Settlement or the Order and Judgement in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

71.    Voya and Lincoln agree to provide, or cause to be provided, all data reasonably necessary for Class Counsel to effectuate the distribution of Class Notice, allocation, and payments to the Settlement Class.

72.    The Parties agree that if this Agreement or the Settlement fails to be approved, fails to become effective, otherwise fails to be consummated, is declared void, or if there is no Final Settlement Date, then the Parties will be returned to *status quo ante*, as if this Agreement had never been negotiated or executed, except that all Settlement Administration Expenses shall not be

recouped. Each Party will be restored to the place it was in as of the date this Agreement was signed with the right to assert in the Action any argument or defense that was available to it at that time.

73.     Except as expressly provided herein, nothing in this Agreement shall change the terms of any Policy. Nothing in this Agreement shall preclude any action to enforce the terms of this Agreement.

74.     The Parties agree, to the extent permitted by law, that all agreements made and orders entered during the course of the Action relating to confidentiality of information shall survive this Agreement. To the extent Class Counsel or the Settlement Administrator requires Confidential Information to effectuate the terms of this Agreement, the terms of the Stipulated Confidentiality Agreement and Protective Order and Addendum entered in the Action on January 19, 2017 (Dkt. 39) shall apply to any information necessary to effectuate the terms of this Agreement.

75.     The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.  No waiver of any provision of this Agreement or consent to any departure by either Party therefrom shall be effective unless the same shall be in writing, signed by the Parties or their counsel, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No amendment or modification made to this Agreement pursuant to this paragraph shall require any additional notice to the Settlement Class Members, including written or publication notice, unless ordered by the Court. Plaintiff and Class Counsel agree not to seek such additional notice. The Parties may provide updates on any amendments or modifications made to this Agreement on the website as described in Section 52.

76.    Each person executing the Agreement on behalf of any Party hereby warrants that such person has the full authority to do so.

77.    The Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Furthermore, electronically-signed PDF versions or copies of original signatures may be accepted as actual signatures, and will have the same force and effect as the original. A complete set of executed counterparts shall be filed with the Court.

78.    The Agreement shall be binding upon, and inure to the benefit of, the successors, heirs, and assigns of the Parties hereto.  This Agreement is not designed to and does not create any third-party beneficiaries either express or implied, except as to the Settlement Class Members.

79.    The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Party.  No Party shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel.  Each Party and its respective counsel cooperated in the drafting and preparation of the Agreement. In any construction to be made of the Agreement, the Agreement shall not be construed against any Party.

80.    Other than necessary disclosures made to the Court or the Settlement Administrator, this Agreement and all related information and communication shall be held strictly confidential by Plaintiff, Class Counsel and their agents until such time as the Parties file this Agreement with the Court.

81.    The Parties and their counsel further agree that their discussions and the information exchanged in the course of negotiating this Settlement are confidential under the terms

of the mediation agreement signed by the Parties in connection with the mediation session with the Mediator and any follow-up negotiations between the Parties' counsel.  Such exchanged information was made available on the condition that neither the Parties nor their counsel may disclose it to third parties (other than experts or consultants retained by the Parties in connection with the Action and subject to confidentiality restrictions), that it not be the subject of public comment, and that it not be publicly disclosed or used by the Parties or their counsel in any way in the Action should it not settle, or in any other proceeding; provided however, that nothing contained herein shall prohibit the Parties from seeking such information through formal discovery if not previously requested through formal discovery or from referring to the existence of such information in connection with the Settlement of the Action.

82.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York, without reference to its choice-of-law or conflict-of-laws rules.

83.    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement and any discovery sought from or concerning objectors to this Agreement. All Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

84.    Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturday and Sunday) express delivery service as follows:

(a)    If to Voya or Lincoln, then to:

| | |
|---|---|
| Motty Shulman | Alan B. Vickery |
| Robin A. Henry | John F. LaSalle |
| Glenn L. Radecki | **Boies Schiller Flexner LLP** |
| **Fried, Frank, Harris, Shriver & Jacobson LLP** | 333 Main Street |
| | Armonk, New York 10504 |
| One New York Plaza | Tel: (914) 749-8200 |

New York, New York 10004-1980                    Fax: (914) 749-8300
(212) 859-8000 (telephone)                       avickery@bsfllp.com
(212) 859-4000 (facsimile)                       jlasalle@bsfllp.com
motty.shulman@friedfrank.com
robin.henry@friedfrank.com
glenn.radecki@friedfrank.com

     (b) If to Plaintiff or the Class, then to:

Seth Ard                                         Steven G. Sklaver
Ryan C. Kirkpatrick                              Michael Gervais
**Susman Godfrey L.L.P.**                        Nicholas N. Spear
1301 Avenue of the Americas, 32nd Floor          **Susman Godfrey L.L.P.**
New York, NY 10019                               1900 Avenue of the Stars, Suite 1400
Tel: 212-336-8330                                Los Angeles, CA 90067-6029
Fax: 212-336-8340                                Tel: 310-789-3100
sard@susmangodfrey.com                           Fax: 310-789-3150
rkirkpatrick@susmangodfrey.com                   ssklaver@susmangodfrey.com
                                                 mgervais@susmangodfrey.com
                                                 nspear@susmangodfrey.com

85.    The Parties reserve the right to agree between themselves on any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

86.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of any court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  Each other day of the period to be computed shall be included, including the last day thereof, unless such last day is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court on a day in which the court is closed during regular business hours.  In any event, the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the court is closed.  When a time period is less than seven business days, intermediate Saturdays, Sundays, legal holidays, and days on which the court is closed shall be excluded from the computation.  As used

in this Paragraph, legal holidays include New Year's Day, Dr. Martin Luther King Jr. Day, Lincoln's Birthday, Washington's Birthday, Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Election Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a holiday by Federal law or New York Law.

**AGREED TO BY**:


_Helen Hanks_ (signature)

Helen Hanks

Date: ___January 5, 2022___


**Voya Retirement Insurance and Annuity Company**

By: _____

Title: _____

Date: _____


**Lincoln Life and Annuity Company of New York**

By: _____

Title: _____

Date: _____

Execution Version

AGREED TO BY:

**Voya Retirement Insurance and Annuity Company**

_____

**Helen Hanks**

By: _____

Title: _Secretary_____

Dated: January _5_ , 2022

Dated: January __, 2022

**Lincoln Life and Annuity Company of New York**

By: _____

Title: _____

Dated: January __, 2022

AGREED TO BY:

**Voya Retirement Insurance and Annuity Company**

_____
**Helen Hanks**

By:    _____

Title:    _____

Dated:  January __, 2022

Dated: January __, 2022

**Lincoln Life and Annuity Company of New York**

By:    _____

Title:    President

Dated: January  4 , 2022

**APPROVED ONLY AS TO FORM**:

Motty Shulman
Digitally signed by: Motty Shulman
DN: CN = Motty Shulman email =
motty.shulman@friedfrank.com C =
AD
Date: 2022.01.05 11:48:22 -05'00'

_____

Motty Shulman
**Fried, Frank, Harris, Shriver & Jacobson LLP**
One New York Plaza
New York, New York 10004-1980
(212) 859-8000 (telephone)
(212) 859-4000 (facsimile)
motty.shulman@friedfrank.com

*Counsel for Defendant Voya Retirement Insurance and Annuity Company
and Lincoln Life & Annuity Company of New York*

_____

Steven G. Sklaver
**Susman Godfrey L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: 310-789-3100
Fax: 310-789-3150
ssklaver@susmangodfrey.com

*Class Counsel and Attorneys for Plaintiff Helen Hanks*